J. Daniel Holsenback, Esq. (SBN 145640)
**J. DANIEL HOLSENBACK, APC**
625 Broadway, Suite 906
San Diego, California 92101
Telephone:  (619) 269-4634
Facsimile:  (619) 269-4635

Attorneys for Plaintiffs Theodore & Lois Koziol

FILED
08 MAY 29 PM 12: 25
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

'08 CV 0947 DMS BLM

| | |
|---|---|
| THEODORE AND LOIS KOZIOL<br>24 Seagoin Road<br>Brick Town, NJ 08723<br><br>              Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA<br>The Executive Office<br>Office of the Legal Adviser<br>Room 5519<br>United States Department of State<br>2201 C Street, NW<br>Washington, DC 20520-6310<br><br>              Defendants. | Case No.<br><br>(E.D. Pa. No. 07-3432)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS**<br><br>Hon.<br>Courtroom:<br>Date:<br>Time:<br><br>**[FRCP 45]** |

### PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS

### AGAINST GENERAL ATOMICS AERONAUTICAL SYSTEMS, INC.

Plaintiffs respectfully request this Court to compel General Atomics Aeronautical Systems, Inc. (GA-ASI) to produce documents responsive to their subpoena issued from this Court pursuant to Federal Rule of Civil Procedure 45 and for sanctions for failing to comply with plaintiffs' request as required by the law.

/ / /

Plaintiffs are seeking documents showing the relationship between GA-ASI and its Austrian-based subcontractor of aircraft engines, "Rotax".[1] The documents plaintiffs are seeking are relevant and vital to their claims in this case and in their action in New Jersey state court captioned *Koziol v. Bombardier Inc., et al*, No. OC-NL-2749-07 (NJ Super. Ocean County). Because of the importance of these documents, plaintiffs have gone through great lengths to procure them. Counsel for plaintiffs and GA-ASI have discussed the scope and terms of this subpoena *ad nauseum*. Based on these discussions, plaintiffs significantly narrowed their requests, which in turn allowed GA-ASI's counsel to compile the "sampling of documents" they claimed were forthcoming. Rather than produce these documents as promised, they responded with a series of objections – none of which justifies their withholding. Without the documents, plaintiffs will be prejudiced and could be placed out of court. Plaintiffs can only obtain these documents from GA-ASI. Plaintiffs request this Court to order GA-ASI to produce documents responsive to their subpoena. Because GA-ASI has blatantly disregarded the rule of law by failing to comply with the subpoena, plaintiffs are also seeking sanctions against GA-ASI, including, but not limited to, attorneys' fees and costs.

## I. BACKGROUND

Plaintiffs served GA-ASI with a subpoena, issued from the United States District Court for the Southern District of California, pursuant to FRCP 45, seeking documents regarding the relationship between the military contractor, GA-ASI and its Austrian subcontractor, Rotax. These documents are relevant to this case as well as to the New Jersey action, *Koziol v. Bombardier Inc., et al*, No. OC-NL-2749-07 (NJ Super. Ocean County), in which Rotax' amicability to service of process and American business contacts are at issue.

General Atomics Aeronautical Systems, Inc. (GA-ASI) has a contract with the United States military to build the Predator – a glorified model airplane powered by a lawnmower engine. This lawnmower engine is manufactured by a foreign subcontractor – Rotax. The Rotax engine has been

---

[1] "Rotax" has changed its name several times over the years. Reference to "Rotax" in this motion refers to BRP-Rotax GmbH & Co. KG; BRP-Rotax; Bombardier-Rotax GmbH; Bombardier-Rotax GmbH & Co.; and/or Bombardier-Rotax GmbH & Co. KG.

1  so unreliable the Air Force has been researching other engine options. In return for this shoddy
2  aircraft, which is as expensive as an F-16 fighter, General Atomics charges American taxpayers
3  hundreds of millions of dollars. At the same time they charge U.S. taxpayers an exorbitant amount
4  for this aircraft, they have shown complete disregard for the rule of law in this country.

5  Plaintiffs served a subpoena on "General Atomics" dated February 21, 2008. (Exhibit "A").
6  Shortly after receiving this subpoena, counsel for General Atomics, Daniel Lowenthal, contacted
7  plaintiffs' counsel. Mr. Lowenthal explained that the appropriate designation for "General
8  Atomics" is "General Atomics Aeronautical Systems, Inc." (GA-ASI). Despite this misnomer, Mr.
9  Lowenthal and his associate, Sarah Goodstine, agreed to cooperate:

> We do not concede that General Atomics Aeronautical Services, Inc. is subject to the subpoena issued to General Atomics (GA). Nevertheless, **in an effort to make this process as efficient as possible, we have asked both GA and GA-ASI to scope the production**. Although we do not concede that the subpoena received by GA also requires a response from GA-ASI, both GA and GA-ASI voluntarily agreed to determine the potential volume of documents.
>
> …
>
> If you are willing to agree to this reduction in scope, we propose to open a dialogue with you regarding the sufficiency and proceed according to the timeframe you initially agreed to – that is, 30 days from the receipt of written notice from you of such deadline.

(D. Lowenthal E-mail to A. Wolk dtd. 3/13/08 at Exhibit "B"). Based on such representations
detailed in this e-mail and in numerous telephone conversations by GA-ASI's counsel, Mr. Wolk
agreed to amend the subpoena "to further reduce the time and effort requested of [GA-ASI] to
obtain documents responsive to the requests." (See Exhibit "B") (A.Wolk E-mail to D. Lowenthal
dtd. 3/10/08 at Exhibit "C").

Several days later, Mr. Lowenthal's co-counsel, Sarah Goodstine sent an e-mail regarding
the documents that were forthcoming on April 5, 2008:

> We write to let you know the timeframe within which we can produce a sample of documents sufficient to show each of the requests within your subpoena, to the extent documents exist for each request.
>
> We understand that **GA and GA-ASI are in the process of collecting documents** and we anticipate that **we will be able to produce a sample of documents from the categories from which documents are available by April 5, 2008**.
>
> As stated previously, a protection order must be in place prior to production of any documents. Please provide us a draft protective order.

(S. Goodstine E-mail to A. Wolk dtd. 3/19/08 at Exhibit "D") (emphasis added). Then, Mr. Wolk and Ms. Goodstine negotiated several draft confidentiality agreements. (Exhibit "E"). Ms. Goodstine further assured Mr. Wolk that that GA-ASI would soon produce documents responsive to the subpoena:

> Further to my e-mail dated March 19, 2008, I write to update you on the timeframe within which we anticipate that we can produce a sample of documents sufficient to show each of the requests within your subpoena, to the extent documents exists exist for each request.
>
> **We have received documents and are well in the process of our review of the documents.** We will provide you with a draft protective order to govern the production of documents in the near future.

(S. Goodstine E-mail to A. Wolk dtd. 4/2/08 at Exhibit "F") (emphasis added).

In this e-mail, Ms. Goodstine also requested plaintiffs' counsel to resubmit the subpoena to formally request the documents from "General Atomics Aeronautical Systems, Inc." (Exhibit "F"). In an abundance of caution, plaintiffs' counsel reserved the subpoena dated April 3 on April 4, 2008. (Exhibit "G").

Ms. Goodstine served Mr. Wolk with a draft protective order that would govern not only the original subpoena, but the revised subpoena as well. (S. Goodstine E-mail to A. Wolk dtd. 4/4/08 at Exhibit "H"). Under this proposed protective order, plaintiffs would be prohibited from using the responsive documents in other litigation, including the New Jersey action. This prohibition is completely unconscionable, particularly when Mr. Wolk made clear from the very beginning that these documents were necessary in that action. (Exhibit "C").

Instead of producing a single document, GA responded to the February 21, 2008 subpoena by raising twelve general objections and objecting to every single request plaintiffs made. (Exhibit "I"). GA-ASI's objections included claims that the requests were overly broad, unduly burdensome, irrelevant, privileged, and that it extends to persons and/or entities not under the control of "General Atomics". (Exhibit "I"). A few days later, GA-ASI responded to the April 3, 2008 subpoena with additional objections, which also included the objection that plaintiffs failed to allow reasonable time for compliance. (Exhibit "J"). Despite plaintiffs' grueling efforts to simplify this process for GA-ASI and repeated negotiations with counsel, it responded with a plethora of

objections and not a single document. As the evidence shows, GA-ASI's objections lack merit. Instead, it is a deliberate attempt to thwart its duties under the law.

GA-ASI's blatant disregard for the law should not be accepted. These documents are vital to plaintiffs' claims in this case as well as in the New Jersey litigation, which left plaintiffs no choice but to seek legal sanctuary in this Court. As a direct result of GA-ASI's hindrance, plaintiffs were forced to file this action, incur additional attorneys' fees and costs. Therefore, sanctions are appropriate.

## II. ARGUMENT

GA-ASI has deliberately attempted to circumvent the subpoena requirements established by the Rules, and should be ordered to produce the responsive documents and be subject to sanctions for its conduct.

The service and response requirements of subpoenas are set forth in Federal Rule of Civil Procedure 45. Under Rule 45, a party responding to a documents subpoena is required to produce the documents or set forth a good faith basis for why compliance is not possible. Fed. R. Civ. P. 45(d). If a party fails to comply with the subpoena, it can be held in contempt.

> (e)   Contempt. The issuing court may hold in contempt a person who, having been served fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

Fed. R. Civ. P. 45(e).

The annotation notes C45-21 of FRCP 45 provide:

> The motion to compel supplied by paragraph (2)(B) of subdivision (c) should, like the motion to quash or modify set forth in paragraph (3)(A), be made to the court from which the **subpoena issued**. That will presumably be a court in a district convenient to the nonparty, see Rule 45(b)(2), and it is of course the nonparty whose convenience Rule 45 is most concerned about protecting.

Here, an order compelling document production and sanctions is appropriate where GA-ASI has not demonstrated any good reason for failing to comply with plaintiffs' lawful subpoena.

GA-ASI's claims that plaintiffs' requests are overly broad, unduly burdensome, and irrelevant are unfounded. Plaintiffs designed their subpoena to encompass a range of possible areas of inquiry and to be as specific as possible based on information available to them at the time.

1  Although the language of the subpoena is not overly broad, plaintiffs' counsel narrowed the scope
2  of their requests under the guidance of GA-ASI's counsel in his good-faith effort to make this
3  process as painless as possible for GA-ASI.  The documents plaintiffs are seeking are vital and
4  relevant to this case and to the New Jersey action to establish Rotax' contacts with the United
5  States, as plaintiffs' counsel explained to GA-ASI.  (Exhibit "C").  Despite Mr. Wolk's concessions
6  to narrow the scope of his request, and GA-ASI's statement that the documents were forthcoming,
7  nothing was ever produced in response.
8        Likewise, GA-ASI's claims that all of their responsive documents are subject to a number of
9  privileges lacks merit.  GA-ASI proposes that even the most obvious and simple subjects like
10 communications between GA-ASI and Rotax concerning sales of this motor in the United States are
11 subject to privilege.  Even the United States military has more been forthcoming about the use of
12 Rotax engines in GA-ASI's aircraft.  For instance, the Department of Defense published its 2004
13 report on its Study on the Impact of Foreign Sourcing of Systems specifically identifies Rotax as a
14 "Foreign Subcontractor" hired to provide engines for military aircraft.  (See Report Excerpts at
15 Exhibit "K" at 21-22).  Lieutenant Colonel Dwight C. Schmidt stated in an affidavit that he
16 conducted an internet search of Unmanned Aerial Vehicles that used Rotax engines and listed seven
17 which were manufactured by GA-ASI.  (Exhibit "L").  The NTSB held a safety forum on the use of
18 unmanned military aircraft a few weeks ago, which included presentations on GA-ASI's aircraft,
19 including a presentation by a GA-ASI representative himself.  (Exhibit "M").  The military's
20 willingness to disclose this information highlights the absurdity of GA-ASI's contention that every
21 responsive document in its possession is subject to privilege.
22       GA-ASI also argues that it did not have sufficient time to respond to plaintiffs' April 3, 2008
23 subpoena.  Rule 45 only requires a "reasonable time to comply" which counsel for GA-ASI clearly
24 had.  Plaintiffs' original subpoena was dated February 21, 2008.  Since that time, Mr. Wolk and
25 GA-ASI's counsel have been in regular contact to discuss and modify the subpoena as required.
26 Throughout these discussions, GA-ASI's counsel emphasized that although the original subpoena
27 was directed to "General Atomics", "General Atomics Aeronautical Systems, Inc." was also in the
28 process of gathering documents.  (Exhibits "D", "F").  Although GA-ASI's counsel was negotiating

1  and compiling documents on behalf of the Aeronautical Systems unit, counsel requested plaintiffs
2  to go through the formality of forwarding them a subpoena specifically directed to "GA-ASI". In
3  an abundance of caution, plaintiffs officially reserved the subpoena on April 4, 2008. Although the
4  formal date of the GA-ASI subpoena was April 3, 2008, GA-ASI was aware that the original
5  February 21, 2008 subpoena was directed to them in their capacity as a military contractor of
6  aircraft powered by Rotax engines. The time plaintiffs allowed GA-ASI is certainly is "reasonable"
7  as required under the Rules.

8  Based on the reasons stated above, GA-ASI claims that it does not have a single document
9  in response to plaintiffs' subpoena. Common sense and representations and explicit statements
10 from GA-ASI's counsel suggest otherwise. Ms. Goodstine stated in her e-mail of March 19, 2008:

> We understand that GA and GA-ASI are in the process of collecting documents and **we anticipate that we will be able to produce a sample of documents from the categories from which documents are available by April 5, 2008.**

13 (Exhibit "D"). In a follow up e-mail, Ms. Goodstine affirmed that the documents were forthcoming.

> **We have received documents and are well in the process of our review of the documents.** We will provide you with a draft protective order to govern the production of documents in the near future.

16 (Exhibit "F"). GA-ASI does have documents and it intended to produce them by April 5. As part
17 of this effort, Ms. Goodstine negotiated a protective agreement with Mr. Wolk. However, when the
18 time came, GA-ASI did not provide plaintiffs with a single document or a valid excuse for
19 withholding them. Either Ms. Goodstine intended this agreement to cover the responsive sampling
20 of documents, or she engaged Mr. Wolk in a completely fruitless exercise by negotiating an
21 agreement to protect documents that do not exist.

22 GA-ASI should be sanctioned for its utter disregard and outright abuse of the legal system
23 by failing to comply with plaintiffs' subpoena. It has documents its counsel claimed were going to
24 be produced. Instead of complying with the Rules, GA-ASI simply objected to everything and
25 forced plaintiffs to decide whether filing this motion was worthwhile. Because plaintiffs would be
26 severely prejudiced without these documents, plaintiffs decided to go forward with this motion,
27 which required the expense of hiring California counsel and approximately $350 for filing fees.
28 GA-ASI's decision to hide behind a number of bogus reasons why it cannot comply with plaintiffs'

subpoena is unjust. GA-ASI should be sanctioned, and at the very least, be required to reimburse plaintiffs for their attorneys' fees and court costs associated with this motion. Such attorneys' fees and court costs will be set forth in declarations to be filed with the Subsequent Notice of Hearing.

### III. CONCLUSION

GA-ASI should be compelled to produce documents responsive to plaintiffs' subpoena. GA-ASI's objection to everything requested in the face of its actual representations that documents were forthcoming is an abuse of the legal system, a fraud on this court, and a corrupt perversion of the requirements of all citizens to respect the legal process and not act to obstruct justice. The sordid and apparent falsity of these responses is worthy of sanctions, since it demonstrates utter contempt for the rule of law.

May 28, 2008

J. DANIEL HOLSENBACK, APC

By: _____
J. Daniel Holsenback
Attorney for Plaintiffs
Theodore & Lois Koziol