1  J. Daniel Holsenback, Esq. (SBN 145640)
**J. DANIEL HOLSENBACK, APC**
2  625 Broadway, Suite 906
San Diego, California  92101
3  Telephone:      (619) 269-4634
Facsimile:       (619) 269-4635
4
Attorneys for Plaintiffs Theodore & Lois Koziol
5

6

7

8                **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  THEODORE AND LOIS KOZIOL          )  Case No.   08cv947-DMS (BLM)
24 Seagoin Road                   )
Brick Town, NJ 08723              )  (E.D. Pa. No. 07-3432)
12                                      )
Plaintiffs,    )  **PLAINTIFFS' REPLY IN FURTHER**
13                                      )  **SUPPORT OF THEIR MOTION TO**
vs.               )  **COMPEL AND FOR SANCTIONS**
14                                      )  **AGAINST GENERAL ATOMICS**
THE UNITED STATES OF AMERICA      )  **AERONAUTICAL SYSTEMS, INC.**
15  The Executive Office              )
Office of the Legal Adviser       )  Hon.          Barbara L. Major
16  Room 5519                         )  Courtroom:    TBD
United States Department of State )  Date:         August 13, 2008
17  2201 C Street, NW                 )  Time:         1:30 p.m.
Washington, DC 20520-6310         )
18                                      )         **[FRCP 45]**
Defendants.    )
19                                      )
                                    )
20  _____

21

22

23

24

25

26

27

28

0

1

**TABLE OF CONTENTS**

2

                                                                    Page

I.     Summary of the Negotiations……………………………………….............1

II.    GA-ASI's Factual Presentation Concentrates on Issues that are
       Irrelevant to the Court's Consideration of the Enforceability
       of the Pending Subpoena…………………………………………………4

       A.     The Fact that Subpoenaed Documents are Relevant
              to More than One Action is Not a Basis for Sustaining
              any of GA-ASI's Objections…………………………………………6

       B.     Plaintiffs' Subpoena is Not Unduly Burdensome…………………………8

III.   Plaintiffs have Made Every Effort to Accommodate GA-ASI
       and to Work in Good Faith to Resolve the Obstacles
       Necessitating Court Intervention, while GA-ASI has engaged
       in Unreasonable Behavior……………………………………………………9

IV.    Conclusion……………………………………………………………12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

<u>Page</u>

**CASES**

*Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975))……………..………5

*Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86, 91 (D. N.J. 1986)………………...7

*Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992)………………………7

*Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362,

    99 S.Ct. 2800, 2813 (1979)………………………………………………11

*Houston Business Journal, Inc. v. Office of Comptroller of Currency*,

    86 F.3d 1208 (D.C. Cir. 1996)………………………………………...8

*Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982)………………………………11

*Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 479 (S.D.N.Y. 1982)………………12

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d

    1206, 1210 (9th Cir. 2002)……………………………………………11

*Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604 (C.D. Cal. 1995)……..………5

*Topol v. Trustees of Univ. of Pa.*, 160 F.R.D. 476, 477 (E.D. Pa. 1995)………………7

*United States v. Hooker Chemicals & Plastics Corp.*, 90 F.R.D. 421,

    425 (W.D.N.Y. 1981)………………………………………………12

*United States v. Kordel*, 397 U.S. 1, 11-13 (1970)………………………...………6

*United States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 648

    (C.D. Cal. 2007)………………………………………………...………5

*Waelde v. Merck, Sharpe, and Dohme*, 94 F.R.D. 27, 28 (C.D.Mich. 1981)…………12

*Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F. Supp.

    866, 891 (E.D.Pa. 1981)………………………………………………12

1
2

**STATUTES**

3    Fed. R. Civ. P. 26…………………………………………………....…*Passim*

4    Fed. R. Civ. P. 45…………………………………………………...*Passim*

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Plaintiff's Reply in Further Support of Their Motion to Compel and for</u>**

**<u>Sanctions Against General Atomics Aeronautical Systems, Inc.</u>**

Plaintiffs have been extremely cooperative and made every attempt to facilitate GA-ASI's production of the requested documents. Plaintiffs rely on the extensive e-mail string which has been lodged as Exhibits to show that for months Plaintiffs' counsel has tried to get cooperation from GA-ASI and been unsuccessful only because GA-ASI made no serious effort to cooperate. Moreover, once Rotax got wind of the subpoena and contacted GA-ASI, GA-ASI started stonewalling any meet and confer efforts. (Ex. 11, 6/27/08 8:48PM email)

Not only did Plaintiffs re-serve the subpoena at GA-ASI's request when it served the proper party in the first instance, but Plaintiffs narrowed the scope of the subpoena, reduced the years of documents requested, reduced the numbers of documents requested, reduced the categories of documents requested, extended the response time twice, offered a confidentiality agreement when one was not required and then tried to negotiate a demanded Protective Order for hours to no avail. GA-ASI believes meet and confer means capitulate and that is a far cry from what Plaintiffs are required or willing to do.

**I.     <u>Summary of the Negotiations</u>**

Despite the fact that the initial subpoena was served in February 2008, GA-ASI has produced no documents. Instead, GA-ASI refused to produce documents and insisted on an onerous, unreasonable protective order which they knew no lawyer could reasonably agree to. Now GA-ASI, rather than addressing the merits, has accused Plaintiffs of bad faith. Plaintiffs' subpoena was a simple task made complicated and expensive for no good reason by GA-ASI. As the e-mail string shows, Plaintiffs tried to do everything to make this inexpensive and simple. General Atomics chose to make it difficult and cumbersome.

When GA-ASI asked Plaintiffs to incur the expense of a new subpoena on an affiliated company, Plaintiffs complied.  (Ex. 2, 3/13/08 12:05PM email; Ex. 4, 4/2/08 4:49PM email; *Wolk Declaration* ¶ 7-9).  However, there was no need to re-serve the subpoena because General Atomics ASI holds itself out as General Atomics.  (Ex. 14, General Atomics website).  When GA-ASI asked for the scope of subpoena to be narrowed, Plaintiffs complied by reducing the timeframe the subpoena covered to four years and the number of categories of information requested.  (Ex. 1; *Wolk Declaration* ¶ 7). However, there was no need to reduce the number of years because a review of a correspondence file should have taken minutes.  There was also no need to reduce the categories because most were overlapping and could have been responded to with the same document.

Additionally, Plaintiff proposed giving GA-ASI protection of its confidential documents even though none of the documents were the types that are generally subject to a protective order. (Ex. 1, 3/10/08 6:42PM, 3/8/08 5:06PM emails; Ex. 3 3/19/2008 8:45PM email).  The documents at issue mean nothing to GA-ASI and are relevant only to Rotax's doing continuous business in the United States.  The protective order GA-ASI ultimately proposed included two unconscionable provisions which were non-negotiable. (Ex. 11, 6/27/08 9:44PM email; Ex. 12, June 27, 2008 Draft Protective Order; *Wolk Declaration* ¶¶ 13-14).   Although Plaintiffs, on their own initiative, proposed a fair protective order, GA-ASI refused to sign it and insisted on using its own overly burdensome, unfair agreement.  (Ex. 3, 3/19/2008 8:45PM email; *Wolk Declaration* ¶¶ 15-16). Plaintiffs' counsel has agreed to almost all of GA-ASI's demands.  (*Wolk Declaration* ¶ 13). GA-ASI's protective order initially sought to prevent Plaintiffs from using the documents in the New Jersey state action, even though they had previously agreed to such a use.  (Ex. 4, 4/4/2008 1:20PM email; *Wolk Declaration* ¶ 10). After hours of frustrating negotiations, the only two provisions Plaintiffs contest are so patently unreasonable that no attorney, keeping his clients' and colleagues'

2

1  best interest in mind would bind himself to such a lopsided agreement.[1] (*Wolk Declaration* ¶ 10, 13-

2  14).

3      Finally, each time GA-ASI asked for an extension of time, Plaintiffs granted it.  (Ex. 1,

4  3/10/2008 6:14PM, 3/10/2008 5:06PM emails; *Wolk Declaration* ¶¶ 6-7).   GA-ASI asserted a

5  series to frivolous objections.  There is no justification for GA-ASI's claim of attorney-client or

6  litigation privilege because none of the documents sought or intended to be produced could possibly

7  fall into those categories.   Moreover, there should never have been a claim of non-relevancy

8  because that was never asserted in any negotiations and GA-ASI agreed that the documents were

9  relevant.  In short, this is a paper chase, started and perpetuated by GA-ASI.

10
11      GA-ASI's Response only diverts the Court's attention away from the important issue as to

12  whether the documents, which if received may negate the entire federal FOIA action, are relevant to

13  that action.   GA-ASI's opposition to Plaintiffs' legally enforceable subpoena is based on its

14  misguided belief that the documents pertain solely to the non-federal New Jersey state court

15  litigation.  GA-ASI's misperception was created because the parties have contemplated the potential

16  use of responsive documents in non-federal litigation.  (*See* Ex. 5, 4/4/2008 1:20PM email)

17
18      In addition, GA-ASI's counsel's characterization of the extensive communications

19  exchanged between the parties while negotiating a <u>mutually</u> <u>acceptable</u> protective order undermines

20  GA-ASI's allegation that the meet and confer pre-requisites have not been met. The record proves

21  that extensive negotiations took place but they were unsuccessful.   (*E.g.,* Ex. 3; Ex. 5; Ex. 11,

22  6/27/2008 9:44PM, 6/27/2008 5:550PM emails).

23
24
25  ─────────────────
26  [1]    The two provisions still at issue will be discussed later in this Reply.  By way of
    background, GA-ASI is insisting on the following provisions: (1) Plaintiffs make a motion to close
27  the courtroom before disclosing any of GA-ASI's documents; and (2) Plaintiffs will be subject to
    automatic sanctions with no ability to cure if there is an inadvertent disclosure of any of the
28  documents.  (Ex. 12, June 27, 2008 Draft Protective Order; *Wolk Declaration* ¶¶ 13-14).

3

**II.     GA-ASI's Factual Presentation Concentrates on Issues that are Irrelevant to the Court's Consideration of the Enforceability of the Pending Subpoena**

GA-ASI's factual presentation concentrates on the relevancy that the requested documents may have on state court litigation separate from the underlying federal FOIA action which gives rise to the authority to exercise Rule 45's subpoena privileges.  To this end, GA-ASI misconstrues the facts and issues in order to support its argument that the requested documents are not relevant. By doing so, GA-ASI completely overlooks the relevancy of the documents to the FOIA action.

Most importantly, GA-ASI makes the misleading argument that Plaintiffs admitted that "the subpoenaed documents are 'useless' to the Pennsylvania Federal Action."  *Lowenthal Dec.* ¶ 9. However, GA-ASI only cites a portion of the referenced communication, which when read as a whole exposes the falsity of its argument:

> Dear Sarah,
>
> This was not the deal and the information was also to be used in the New Jersey litigation. Kindly respond to the subpoena so we can litigate how this non trade secret information should be handled.
>
> Sorry but I am not going to be in a position that what is produced is useless. This is misleading a court by a company that makes billions in this country and claims it does no business here. This was a simple task. Kindly respond by Monday so I can file a motion next week.
>
> Thank you,
> Arthur Wolk

(Ex. 5, 4/4/08 1:20PM email). This communication clearly references all uses to which the documents could be produced, including the federal FOIA Action and indicates that Plaintiffs made no such admission.  (*Id.*; *Wolk Declaration* ¶ 17). Absent this imagined judicial admission, GA-ASI has no basis to allege that the documents sought are irrelevant.

Federal Rule of Civil Procedure 45 permits a party to serve a nonparty with a subpoena commanding the nonparty to produce documents.  All Rule 45 subpoenas are subject to relevancy

1    requirements set forth in Federal Rule of Civil Procedure 26(b)(1).  Federal Rule 26(b)(1) allows a

2    party to discover "any nonprivileged matter that is relevant to any party's claim or defense--

3    including the existence, description, nature, custody, condition, and location of any documents or

4    other tangible things and the identity and location of persons who know of any discoverable

5    matter."  Discovery may be expanded to include "any matter relevant to the subject matter involved

6    in the action" if good cause is shown.  *Id.*  Relevant information includes not only evidence

7    admissible at trial, but all information that "appears reasonably calculated to lead to the discovery of

8    admissible evidence." Fed. R. Civ. P. 26(b)(1).

9

10        The federal discovery rules are designed to allow parties to discover all of the necessary

11   evidence to assess and resolve their dispute and, therefore, must be construed broadly.  *E.g.*, *United*

12   *States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 648 (C.D. Cal. 2007).  Materials are

13   only exempt from discovery if the party can show that: (1) the discovery sought is unreasonably

14   cumulative or can be obtained from a more convenient, less expensive source; (2) the party seeking

15   discovery already had the opportunity to obtain the information by discovery in the action; or (3) it

16   is overly burdensome. Fed. R. Civ. P. 26(b)(2)(C).  The person seeking to limit discovery bears the

17   "burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and

18   supporting its objections."  *O'Connell*, 245 F.R.D. at 648 (citing *Blankenship v. Hearst Corp.*, 519

19   F.2d 418, 429 (9th Cir.1975)).   In order to meet its burden the person seeking to limit disclosure

20   must prove that there is no possibility that the materials sought will have any bearing on the subject

21   matter of the action.  *See Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604 (C.D. Cal. 1995).

22   GA-ASI has failed to meet its burden in the instant case.

23        By way of background, the FOIA action was brought to obtain documents that may exist in

24   connection with the foreign service of process of an Austrian defendant, Rotax.  (*Wolk Declaration*

25   ¶¶ 3-4).  Rotax, a manufacturer of ultralight engines, was sued in litigation arising from the

5

malfunction of a Rotax 582 engine.  In that litigation, Rotax challenged service of process and personal jurisdiction in the forum state and ultimately obtained a dismissal.  Subsequently, the plaintiffs from the first action (the Koziol's) sued Rotax and others in New Jersey state court.  In the New Jersey state litigation, the Koziols are investigating service of process issues.  Therefore, they filed the FOIA action.

Plaintiffs have been extremely candid about the possibility that documents produced in response to the subpoena may be used in both the federal FOIA action and the New Jersey state court action.  (Ex. 5, 4/4/2008 1:20PM email).  This disclosure was presented so GA-ASI would have full knowledge of potential uses to which their documents may be subject, not to intimate that the documents were unrelated to the federal FOIA action.  However, the documents sought in the subpoena are reasonably calculated to establish a systematic and continuous connection between Rotax and the United States.  If the documents establish a basis for effectuating service on Rotex in the United States, they may render the entire FOIA action moot.  Accordingly, the requested documents go to the heart of the FOIA action.

A.    **The Fact that Subpoenaed Documents are Relevant to More than One Action is Not a Basis for Sustaining any of GA-ASI's Objections**

GA-ASI presents no case law or insightful argument to support its argument that the documents requested are not relevant to the FOIA action.  Instead, GA-ASI references Plaintiffs admission that some of the documents sought might be relevant to their New Jersey state court action and argues that Plaintiffs' subpoena is unwarranted.

There is no prohibition on using discovery obtained in one case in a subsequent case.  *E.g.*, *United States v. Kordel*, 397 U.S. 1, 11-13 (1970) (refusing to overturn defendants' convictions and reasoning that it was permissible to use information obtained from discovery in civil case in subsequent criminal proceeding).  Moreover, there is no per se rule that documents sought in one

case are undiscoverable purely because they may also be relevant to a different case.  *E.g.*, *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) ("[W]here the discovery sought is relevant to a good faith defense in the federal case, the mere fact that it may be used in other litigation does not mandate a protective order."); *Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86, 91 (D. N.J. 1986). Rather, the materials are considered discoverable unless there is evidence that the action was not filed in bad faith or solely for the purpose of obtaining evidence for a different case.  *Cipollone*, 113 F.R.D. at 91 ("So long as the initial litigation has not itself been instituted in bad faith for the purpose of obtaining documents for other actions, and so long as the interests of those represented in the initial litigation are being fully and ethically prosecuted, the Federal Rules do not foreclose the collaborative use of discovery.").

Plaintiffs have not engaged in bad faith or unethical tactics which could render the documents undiscoverable. The FOIA action was filed for the purpose of obtaining evidence the State Department effectuated foreign service on Rotax. (*Wolk Declaration* ¶¶ 3-4).  Plaintiffs have diligently prosecuted their FOIA case in good faith as evidenced by Plaintiffs willingness to extend time for the State Department to locate relevant records and efforts to obtain proof of service directly from the Austrian government.  Accordingly, Plaintiffs' potential use of the documents in the New Jersey state case does not automatically render them undiscoverable in the instant action.

"[M]aterial is relevant if it bears on, or reasonably could bear on, an issue that is or may be involved the litigation."  *Topol v. Trustees of Univ. of Pa.*, 160 F.R.D. 476, 477 (E.D. Pa. 1995). The documents at issue are clearly relevant to Plaintiffs' claim in the FOIA case because they have the potential to undermine the need for Plaintiffs continued prosecution of the FOIA case.  In the FOIA case, the State Department has admitted that it cannot locate the records Plaintiffs need to prove that foreign service occurred.  (*Wolk Declaration* ¶ 5).  The documents requested in the

instant case will show Rotax is subject to service in the United States, thereby eliminating the need for showing foreign service.

Furthermore, good cause exists to enforce the subpoena. The documents requested are relevant to the subject matter of the FOIA case because the issue in the FOIA case is Rotax's amenability to service of process. The documents at issue will prove that Rotax is subject to service of process in the United States. The State Department has admitted that it cannot find the records that substantiate foreign service. (*Wolk Declaration* ¶ 5). Additionally, the Austrian government has refused to cooperate with Plaintiffs attempts to prove service. Therefore, good cause exists to expand discovery to all materials relevant to the subject matter of the FOIA action and require GA-ASI to comply with Plaintiffs' subpoena.

No where can the factual error in GA-ASI's argument be more apparent then in its allegation that this Court has no jurisdiction to enforce the subpoena. In order to make its suspect argument, GA-ASI misleadingly argues that the subpoena was issued out of the state court litigation and cites *Houston Business Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d 1208 (D.C. Cir. 1996) for the proposition that a federal court is without subject matter jurisdiction to issue a *subpoena duces tecum* for a state court action and argues that this Court is without subject matter jurisdiction to issue the subpoena. *Opposition to Motion to Compel*, pp. 7-9. *Houston* dealt with a situation where a federal court issued a subpoena in a state court action. 86 F.3d at 1212. Whereas, this case deals with a subpoena in connection with litigation pending in a sister federal court. Under Federal Rule of Civil Procedure 45(a)(2)(C) a *subpoena duces tecum* must be issued by the district court located where the production is to be made. Therefore, GA-ASI's jurisdictional argument is founded on a misapprehension of facts that renders it entirely without merit.

**B.**     **Plaintiffs' Subpoena is Not Unduly Burdensome**

GA-ASI's burdensomeness argument is undermined by the fact that its documents are already retrieved, boxed and presumably categorized so that they are ready for production.  (*Wolk Declaration* ¶ 19).   In order to deny Plaintiff's request as overly burdensome, GA-ASI must establish that the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C)(iii).  Courts must consider "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues" in deciding whether discovery is proper.  *Id.*

The documents sought are extremely important to Plaintiffs' FOIA action.  The purpose of the FOIA action was to obtain evidence that the State Department served Rotax. (*Wolk Declaration* ¶¶ 3-4). Plaintiffs have already expended significant resources attempting to prove that Rotax was served.  The State Department has admitted that it cannot locate proof of service. (*Wolk Declaration* ¶ 5). The Austrian government has refused to aid Plaintiffs by producing proof of service. Accordingly, Plaintiffs are without recourse in the FOIA case.

Ordering production of GA-ASI's documents would make future efforts to effectuate foreign service unnecessary because such documents will prove that Rotax is subject to service in the United States.  If Plaintiffs can show Rotax is subject to service in the United States, then there is no need for Plaintiffs to continue their FOIA action, or initiate others, because they will have established another means of effectuating service on Rotax.  Without the documents, Plaintiffs will be prejudiced and could be placed out of court.

**III.** **Plaintiffs have Made Every Effort to Accommodate GA-ASI and to Work in Good Faith to Resolve the Obstacles Necessitating Court Intervention, while GA-ASI has engaged in Unreasonable Behavior**

Counsel for plaintiffs and GA-ASI have discussed the scope and terms of this subpoena for hours.  (*E.g.*, Ex. 3, Ex. 5; Ex. 6, Ex. 9, Ex. 11, 6/27/2008 9:44PM, 6/27/2008 5:50PM emails). Based on these discussions, Plaintiffs significantly narrowed the subpoena, which in turn allowed

GA-ASI's counsel to compile the sampling of documents they claimed were forthcoming. (Ex. 1; Ex. 3 3/19/2008 6:27PM email; *Wolk Declaration* ¶ 7).   The subpoena, as amended seeks the following documents:

1.      Any notes, memos or letters that confirm the presence of Rotax personnel in the U.S.

2.      Any documents that confirm the presence of Rotax personnel at the General Atomics facilities in the U.S.

3.      Any documents that relate to the shipment of Rotax engines into the United States.

4.      Any documents that confirm or relate to Rotax's involvement in accident investigations involving Rotax engines.

5.      Any reports of accident investigations involving failures of Rotax engines.

6.      Any document that concerns or relates to Rotax's business activities in the United States with General Atomics during the time period.

7.      These request include any company acting as agent for or representative of Rotax including but not limited to Bombardier Rotax (including all suffixes), Rotax (including all suffixes) Kodiak (Including all suffixes like Kodiak Research, Rotech etc.) and any other company that serves as the agent, importer, alleged independent shipper of Rotax engines.

8.      Correspondence relating to the sale, purchase or malfunctions of Rotax engines with any of those entities described in par. 7.

9.      Any document that concerns or relates to business activities of Rotax or Bombardier Rotax in the State of New Jersey including but not limited to contacts with the U.S. Army Communications, Electronics Command in Fort Monmouth, New Jersey.

10.     Any document that concerns or relates to business activities of Rotax or Bombardier Rotax in the State of New Jersey including but not limited to contacts

10

1    with the United States Navy and/ or the United States Navy Air Warfare Center,

2    Aircraft Division, Lakehurst New Jersey.

3

4    (Ex. 1, 3/10/2008, 6:42 PM email; 3/8/2008, 5:06PM email).

5        On its face, it does not appear that the subpoena seeks the type of trade secrets, product

6    research and development, or financial records generally afforded protection. However, Plaintiffs

7    accepted GA-ASI's representation that the documents at issue consist of confidential research and

8    development and proprietary information and attempted to negotiate a confidentiality agreement

9    suitable to both Plaintiffs and GA-ASI. Despite their good intentions to make this process painless

10   for GA-ASI, Plaintiffs were met with insistence on provisions that are overly burdensome and

11   transcend the level of protection needed here.

12

13       There is no outright privilege covering confidential information or trade secrets. *Federal*

14   *Open Market Committee v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800, 2813 (1979). Confidential

15   protective orders are not issued freely. Rather, a party seeking to prevent the disclosure of discovery

16   documents must file for a protective order by establishing good cause. Fed. R. Civ. P. 26(c)(1);

17   *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). Good

18   cause exists when the moving party proves that "specific prejudice or harm will result if no

19   protective order is granted." *Id.* at 1210-11. The Federal Rules of Civil Procedure give a federal

20   judge discretion to weigh the interests of protecting the information against the need for disclosure.

21   *See* Fed. R. Civ. P. 26(c)(1),(2).

22

23       Although the good cause standard leaves room for discretion, unsubstantiated allegations of

24   harm are insufficient to establish good cause for a protective order. *See, e.g., Joy v. North*, 692 F.2d

25   880, 894 (2d Cir. 1982) (rejecting defendant's argument that certain documents were confidential

26   and should be placed under seal because "a naked conclusory statement that publication of the

27   Report will injure the bank in the industry and local community falls woefully short of the kind of

28

11

showing which raises even an arguable issue as to whether it may be kept under seal."), *cert. denied*, 460 U.S. 1051 (1983); *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 479 (S.D.N.Y. 1982), *Waelde v. Merck, Sharpe, and Dohme*, 94 F.R.D. 27, 28 (C.D.Mich. 1981); *United States v. Hooker Chemicals & Plastics Corp.*, 90 F.R.D. 421, 425 (W.D.N.Y. 1981); *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F. Supp. 866, 891 (E.D.Pa. 1981).

The information produced from this subpoena will be solely used for purposes of litigation. However, the proposed confidentiality order is too harsh with respect to inadvertent disclosure which would otherwise result in automatic sanctions and no room for cure. (*Wolk Declaration* ¶ 14). The threat of enforcement of GA-ASI's inadvertent disclosure proposal will restrict Plaintiffs' and their counsel's use of the documents and ultimately restrict the Court's use of the information contained in the documents. In addition, the order demands that Plaintiffs request the court to close the courtroom before any information may be disclosed. This provision is onerous because the documents are on their face not worthy of protection so a court is likely to consider such a request as evidence of bad faith. (*Wolk Declaration* ¶ 13).

**IV.    Conclusion**

Plaintiffs rest on the email string as evidence of their extensive efforts to make a nonparty's compliance with a lawfully issued subpoena simple, inexpensive and expeditious. There was no justification for GA-ASI or GA to put Plaintiffs through this experience when every reasonable request made was granted instantaneously. The Court should grant Plaintiffs' Motion to Compel because the documents subpoenaed are relevant to the federal FOIA case and compliance is not unduly burdensome on anyone.

12

1    June 10, 2008                                    J. DANIEL HOLSENBACK, APC

2

3                                        By:    /s/ J. Daniel Holsenback
                                                J. Daniel Holsenback
4                                                Attorney for Plaintiffs
                                                Theodore & Lois Koziol
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  J. Daniel Holsenback, Esq. (SBN 145640)
   **J. DANIEL HOLSENBACK, APC**
2  625 Broadway, Suite 906
   San Diego, California  92101
3  Telephone:     (619) 269-4634
   Facsimile:      (619) 269-4635
4
   Attorneys for Plaintiffs Theodore & Lois Koziol
5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

   THEODORE AND LOIS KOZIOL            )  Case No.  08cv0947-DMS (BLM)
11 24 Seagoin Road                     )
   Brick Town, NJ 08723                )  (E.D. Pa. No. 07-3432)
12                                     )
                        Plaintiffs,    )  **DECLARATION OF ARTHUR ALAN**
13                                     )  **WOLK IN FURTHER SUPPORT OF**
                  vs.                  )  **THEIR MOTION TO COMPEL AND**
14                                     )  **MOTION FOR SANCTIONS AGAINST**
   THE UNITED STATES OF AMERICA        )  **GENERAL ATOMICS AERONAUTICAL**
15 The Executive Office                )  **SYSTEMS, INC.**
   Office of the Legal Adviser         )
16 Room 5519                           )
   United States Department of State   )  Hon.          Barbara L. Major
17 2201 C Street, NW                   )  Courtroom:   TBD
   Washington, DC 20520-6310           )  Date:         July 15, 2008
18                                     )  Time:         1:30 p.m.
                        Defendants.    )
19                                     )  **[FRCP 45]**
                                       )
20 _____

21

22         I, Arthur Alan Wolk, declare:

23 1.       I am the attorney for the plaintiffs Dr. Theodore Koziol and his wife Lois.

24 2.       Nothing in this declaration should be construed as criticism against counsel for General

25 Atomics.

26 3.       I filed the FOIA action because I could get no response from the United States State

27 Department concerning service of process against Rotax, a defendant in Austria.

28
                                       1

4.      Rotax was an Austrian corporation owned by Bombardier but since Austria is not a signatory to the Hague Convention service has to take a cumbersome process where our State Department must ask the Austrian Government to make service.

5.      Since the State Department destroys documents after two years and has stated that the documents in question do not exist, I served a subpoena on General Atomics as they refer to themselves at their California address.

6.      Once the subpoena was served I was contacted by Mr. Lowenthal and his associate Ms. Goodstine requesting an extension to respond which I freely gave provided there was an intention in good faith to provide documents which assurances were given.

7.      That was the beginning of a litany of requests by General Atomics which included requests to limit the years of document search to which I agreed, limit the scope of the subpoena to which I agreed, limit the number of documents produced to which I agreed, extend the time to respond again to which I agreed, provide just a sampling of the categories of documents to which I agreed, send another subpoena directed to the affiliated company to which I agreed.

8.      I served the second subpoena because by that time it was painfully apparent that General Atomics was treating this as a paper chase game never intending to produce documents or to negotiate in good faith.

9.      I served the second subpoena though I still believed the first one was more than adequate.

10.      I cut off negotiations when I received a Protective Order that precluded the use of the documents in the New Jersey RICO action, something we agreed I could do at the outset of discussions, and other provisions that no lawyer could agree to.

11.      I looked for and found competent California counsel to file this Motion.

12.      The Objections to the subpoena was ample evidence in my mind were legally unfounded. It not only claimed as to General Atomics that no documents existed when I was told they had already

2

been collected but claimed every privilege and objection known to man when none had been asserted in any prior discussion and just by the nature of the documents none could exist. The Objections were entirely frivolous in my opinion and demonstrated that I had wasted hours of time negotiating in good faith without that being requited.

13.     After this Motion was filed further discussions were attempted to work out a Protective Order. I spent hours on the phone with Mr. Lowenthal and his Associate but the negotiations were just like the first ones.  I gave in on most of the demands but I wasn't about to ask a judge to clear his courtroom over documents that had nothing to do with the secrets or processes or what would be proprietary information when none of the documents intended to be produced could possibly even meet the definition of proprietary, secret or otherwise be protected.

14.     I also wanted to protect against inadvertent disclosure because things do happen innocently and I saw the proposed draft was asking for automatic sanctions.  Instead of blaming what could be others disclosing documents I told Mr. Lowenthal that if my staff "screwed up" and innocently disclosed a document I wanted to be protected from the retaliation he threatened. He took that comment entirely out of context in his Declaration here.

15.     I have negotiated hundreds of Protective Orders and Confidentiality Agreements in my career litigating air crash cases. The one demanded by General Atomics is neither standard nor anything like any I have ever seen.

16.     I offered a Protective Agreement fair to all concerned.

17.     Mr. Lowenthal also claimed I told him that these documents would be useless in the FOIA litigation. That too is taken out of context as I explained there would not be a trial in the FOIA litigation so to that extent while relevant documents were necessary to be produced bearing on the issues sought to be discovered through this litigation, there would be no trial in this litigation which is why they were also necessary in the New Jersey RICO action.

3

18.     This has been a terrible experience and extremely difficult when there are really no issues that should be in litigation.

19.     There are apparently three boxes of documents ready to be produced and none are attorney client or litigation privileged so the objections filed of record are purely unfounded.

20.     Lodged are true and correct copies of the following:

A.     Exhibits 1-11: Email correspondence between Plaintiffs' counsel and GA-ASI's counsel occurring between March 10, 2008 and June 28, 2008 with respect to the subpoena at issue.

B.     Exhibit 12:  Draft Joint Motion for Protective Order and Proposed Protective order from June 27, 2008.

C.     Exhibit 14: Copy of page from General Atomics Website downloaded July 8, 2008.

I declare under penalty of perjury that the foregoing is true and correct.  Executed at San Diego, California this 8th day of July 2008.

Respectfully submitted,


/s/ Arthur Alan Wolk_____

Arthur Alan Wolk

4

# Exhibit 1

**From:** Arthur Alan Wolk
**Sent:** Monday, March 10, 2008 6:42 PM
**To:** Lowenthal, Daniel A. (x2720)
**Cc:** Cynthia Devers
**Subject:** RE: Koziol Subpoena to General Atomics

Dan,
I will amend Nos 9 and 10 in an effort to make it easier and less cumbersome for your client to respond by editing them below. However I was of the clear understanding that you were to let me know this week your client's intentions and not wait until April 5 to object. If the latter is your intention I will give you a week to object until March 17th to do that. You file your objections by the close of business that day.
I have requested RICO counsel to obtain letters rogatory in the event you feel it is a more prudent course to litigate.
The April 5th date was for you to produce documents. Why would I give someone a month to object, it was a courtesy to you and your client to gather the documents in the spirit of cooperation?
Just so you understand Bombardier, Rotax, Kodiak and their lawyers are defendants in a RICO action for obsructing justice nationwide by conspiring to hide information concerning their business activities in this country and New Jersey and Florida in particular. They have already lost a Motion to Dismiss. Please be guided accordingly.

No. 9 will be amended to read
Any document that concerns or relates to business activities of Rotax or Bombardier Rotax in the State of New Jersey including but not limited to contacts with the U.S. Army Communications, Electronics Command in Fort Monmouth, New Jersey.
No 10 will be amended to read:
Any document that concerns or relates to business activities of Rotax or Bombardier Rotax in the State of New Jersey including but not limited to contacts with the United States Navy and/ or the United States Navy Air Warfare Center, Aircraft Division, Lakehurst New Jersey.

You may consider this subpoena served on any General Atomics entity at the served address with access to or right to access the information requested.

The purpose of these amendments is to further reduce the time and effort requested of your client to obtain documents responsive to the requests. We will not re-serve the subpoena in this case as my research indicates it is properly served.

Thanks,

7/8/2008

Arthur

---

**From:** Lowenthal, Daniel A. (x2720) [mailto:dalowenthal@pbwt.com]
**Sent:** Monday, March 10, 2008 6:14 PM
**To:** Arthur Alan Wolk
**Cc:** Goodstine, Sarah (x2476)
**Subject:** Koziol Subpoena to General Atomics

Arthur,

We will proceed with the understanding that April 5 is the adjourned deadline for General Atomics to respond to your subpoena, with Exhibit B to the subpoena modified by both your email on Saturday and Cynthia Devers' email earlier today (both of which appear below), and that the time frame for the documents requested is 2000-2004.

Dan

---

**From:** Cynthia Devers [mailto:cyndi@airlaw.com]
**Sent:** Monday, March 10, 2008 10:15 AM
**To:** Lowenthal, Daniel A. (x2720)
**Cc:** Paul Rosen; Andrew DeFalco; Arthur Alan Wolk
**Subject:** RE: Koziol Subpoena to General Atomics

Dan:

We would like to amend the requests listed in the previous e-mail pasted below to include the following:

9. Any and all contracts, specifications, purchase orders, invoices, bills of lading, reports, notes, correspondence, electronic data, and/or other documents regarding the testing, sale, and/or shipment of Rotax engines to The Naval Air Warfare Center Aircraft Division in Lakehurst, New Jersey.
10. Any and all contracts, specifications, purchase orders, invoices, bills of lading, reports, notes, correspondence, electronic data, and/or other documents regarding the testing, sale, and/or shipment of Rotax engines to The U.S. Army Communications Electronic Command in Fort Monmouth, New Jersey.

Thanks,

Cynthia Devers, *Law Clerk*

---

**From:** Arthur Alan Wolk
**Sent:** Saturday, March 08, 2008 5:06 PM
**To:** Lowenthal, Daniel A. (x2720); Cynthia Devers
**Cc:** Paul Rosen; Andrew DeFalco
**Subject:** RE: Koziol Subpoena to General Atomics

Dan,

I understood our conversation a little differently. I thought you were going to check with your client to see if it wanted to litigate or fight the subpoena, whether it wanted to allow you to accept service of a subpoena that added the suffix to your client's identification, a suffix missing in anything I can find on them as the call themselves "General Atomics" and they clearly knew who we were serving, what we were after and which of their unidentified companies was to be responding. I may be mistaken that you first wanted a limitation of the scope of the subpoena before you approached your client but since it has house counsel I am quite sure the determination has already been made as whether the scope is onerous or not. I believe it is not.

I met with RICO counsel this morning and they suspect, as do I, that General Atomics is in paper chase mode and we will have to fight to get compliance so I have elected to do the following:

1. You may disregard the subpoena return date as I agreed but if I respectfully urge General Atomics (whatever) to start assembling documents as I will not grant extensions when they are re-served since they you know what we are looking for. You may consider April 5th, the day to either object or produce documents under the subpoena served. As to any other subpoena no such extension will be granted other than to make production.

2. When I re-serve, likely under and in the RICO case we shall provide the suffix you directed but will verify with the contracts I have from the Air Force whether that is appropriate given the subject matter and may serve other General Atomics entities or employees.

3. The person most knowledgeable about it's contacts with Rotax will likely be deposed after the documents have been received if we are required to litigate as our RICO case is based upon a nationwide conspiracy to hide Rotax's presence in the United States to avoid jurisdiction and we would have to see of General Atomics was complicit by stonewalling this information. This in no manner should be misconstrued as a threat of litigation. It is a statement of what our litigation is about and why we must be cautious in the RICO case about that subject.

3. I am asking that your client not dispose of any documents that would be responsive to the items mentioned in the subpoena you have already been served with since the re-service is in our view an utter waste of time and money.

As to the matters in the served subpoena, as I explained, in consideration of a willingness to comply, I would reduce the relevant time frame from 2000 to 2004 even though it would relevant, admissible evidence of Rotax's continuing contacts with the U.S. to have a larger time frame. I reserve the right to request that in any re-served subpoena.

As I further explained the purpose of the subpoena was not to be intrusive to General Atomics, to be certain that it was done at least cost and inconvenience to the company and without unnecessary cost of litigation. It was to obtain evidence of Rotax's continuous involvement in soliciting, seeking and shipping engines into the U.S. for use in products General Atomics makes and to verify the names of the individuals from Rotax making trips into the United States for that purpose. I am not interested in processes, secrets, proprietary data or anything that would embarrass or harm General Atomics competitively. Indeed I am willing to keep confidential except for use in the RICO or Products cases any such document, file them under seal and return any copies after the case is over of that would be of assistance tro General Atomics.

Toward that end and without prejudice to our rights to conduct further discovery or enlarge the scope of any subsequently served subpoena, I ask that you consider producing documents in the following categories for the period above.

1. Any notes, memos or letters that confirm the presence of Rotax personnel in the U.S.
2. Any documents that confirm the presence of Rotax personnel at the General Atomics facilities in the U.S.
3. Any documents that relate to the shipment of Rotax engines into the United States.
4. Any documents that confirm or relate to Rotax's involvement in accident investigations involving Rotax engines.
5. Any reports of accident investigations involving failures of Rotax engines.
6. Any document that concerns or relates to Rotax's business activities in the United States with General Atomics during the time period.
7. These request include any company acting as agent for or representative of Rotax including but not limited to Bombardier Rotax (including all suffixes), Rotax (including all suffixes) Kodiak (Including all suffixes like Kodiak Research, Rotech etc.) and any other company that serves as the agent, importer, alleged independent shipper of Rotax engines.
8. Correspondence relating to the sale, purchase or malfunctions of Rotax engines with any of those entities described in par. 7.

I would appreciate your letting me know early next week of your client's intentions.

Arthur

**From:** Lowenthal, Daniel A. (x2720) [mailto:dalowenthal@pbwt.com]
**Sent:** Friday, March 07, 2008 6:27 PM
**To:** Arthur Alan Wolk
**Cc:** Goodstine, Sarah (x2476)
**Subject:** Koziol Subpoena to General Atomics

Art,

I write on behalf of our client General Atomics International Services Corporation.  Pursuant to our call today, this confirms that you have agreed to the following:

(1)  to adjourn the date and time for General Atomics to respond to the Subpoena issued to General Atomics in Koziol v. United States of America, Civ. No. 07-3432 (E.D. Pa.), to a date no earlier than 30 days after you provide written notice to General Atomics to respond to the Subpoena; and

(2)  to propose language early next week to narrow the scope of the 10 document production requests set forth in the Subpoena.

We also understand that the time frame for the production sought is 2000 to 2004.

Pursuant to your request, my contact information is set forth below.

Regards,

Dan

Daniel A. Lowenthal
Partner
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY  10036
Direct:  212-336-2720
Cell:  914-980-3794
Fax:  212-336-1253
dalowenthal@pbwt.com
www.pbwt.com

---------------------------------------------
Privileged/Confidential Information may be contained in this message.  If you are no
the addressee indicated in this message (or responsible for delivery of the message
such person), you may not copy or deliver this message to anyone.  In such case, you
should destroy this message and kindly notify the sender by reply email.  Please adv
immediately if you or your employer do not consent to Internet email for messages of

kind.

------------------------------------------------

IRS Circular 230 disclosure:  Any tax advice contained in this communication (includ
any attachments or enclosures) was not intended or written to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (
promoting, marketing or recommending to another party any transaction or matter addr
in this communication.  (The foregoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)


================================================================================

Privileged/Confidential Information may be contained in this message.  If you are no
the addressee indicated in this message (or responsible for delivery of the message
such person), you may not copy or deliver this message to anyone.  In such case, you
should destroy this message and kindly notify the sender by reply email.  Please adv
immediately if you or your employer do not consent to Internet email for messages of
kind.

------------------------------------------------

IRS Circular 230 disclosure:  Any tax advice contained in this communication (includ
any attachments or enclosures) was not intended or written to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (
promoting, marketing or recommending to another party any transaction or matter addr
in this communication.   nformategoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)


================================================================================

# Exhibit 2

**From:** Arthur Alan Wolk
**Sent:** Thursday, March 13, 2008 12:38 PM
**To:** 'Lowenthal, Daniel A. (x2720)'
**Cc:** 'Andrew DeFalco'
**Subject:** RE: Koziol Subpoena

Dan,

It just occurred to me after re-reading your e-mail.
Are you going to produce the reduced volume of documents by the 5th of April? That is my interpretation but I want to make sure we are on the same page?
Thanks,
Arthur

**From:** Lowenthal, Daniel A. (x2720) [mailto:dalowenthal@pbwt.com]
**Sent:** Thursday, March 13, 2008 12:05 PM
**To:** Arthur Alan Wolk
**Cc:** Goodstine, Sarah (x2476)
**Subject:** Koziol Subpoena

Dear Arthur:

In our continued effort to cooperate with the subpoena issued by Plaintiffs Koziol in Koziol v. United States of America, Civ. No. 07-3432 (E.D. Pa.) to General Atomics, we have worked to determine the scope of the production encompassed by your requests.

We do not concede that General Atomics Aeronautical Services, Inc. (GA-ASI) is subject to the subpoena issued to General Atomics (GA). Nevertheless, in an effort to make this process as efficient as possible, we have asked both GA and GA-ASI to scope the production. Although we do not concede that the subpoena received by GA also requires a response from GA-ASI, both GA and GA-ASI voluntarily agreed to determine the potential volume of documents.

The estimate is that production would take a significant amount of time and could result in as many as 100 boxes of documents.

This level of production presents an extraordinary and undue burden.

We propose that each of the requests within the subpoena be amended to command production of "documents sufficient to show" the underlying facts you propose to illicit with each of your subpoena

7/8/2008

requests.

If you are willing to agree to this reduction in scope, we propose to open a dialogue with you regarding sufficiency and proceed according to the timeframe you initially agreed to - that is, 30 days from the receipt of written notice from you of such deadline.

Dan


Daniel A. Lowenthal
Partner
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Direct: 212-336-2720
Cell: 914-980-3794
Fax: 212-336-1253
dalowenthal@pbwt.com
www.pbwt.com


------------------------------------------------
Privileged/Confidential Information may be contained in this message.  If you are no
the addressee indicated in this message (or responsible for delivery of the message
such person), you may not copy or deliver this message to anyone.  In such case, you
should destroy this message and kindly notify the sender by reply email.  Please adv
immediately if you or your employer do not consent to Internet email for messages of
kind.

------------------------------------------------

IRS Circular 230 disclosure:  Any tax advice contained in this communication (includ
any attachment) is not intended or written to be used, and cannot be
and for the purpose of (i) avoiding penalties under the Internal Revenue Code or (
promoting, marketing or recommending to another party any transaction or matter addr
in this communication.  (The foregoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)

=============================================================================

# Exhibit 3



**From:** Arthur Alan Wolk
**Sent:** Wednesday, March 19, 2008 10:16 PM
**To:** Arthur Alan Wolk
**Subject:** RE: Koziol Subpoena

Dear Sarah,

I don't think an order is going to work as that is going to require me to get approval either from this court or the New Jersey Court which will either delay production or perhaps we may not be able to get one because these documents are not really confidential. I just suggested that we treat them as such to give your client an additional comfort level.
I think the agreement should be okay for now.

Arthur

---

**From:** Arthur Alan Wolk
**Sent:** Wednesday, March 19, 2008 8:45 PM
**To:** 'Goodstine, Sarah (x2476)'
**Subject:** RE: Koziol Subpoena

Dear Sarah,

See if this works for your client. It is simple but accomplishes I think what you and your client will want but let me know what additional terms are important and I will try to accommodate you.

Confidentiality Agreement

All documents produced pursuant to a subpoena issued against GA by the United States District Court for the Southern District of California and served upon responding entities GA and GA-SI shall be presumed confidential unless specifically waived in writing by the producing entity.
These documents may be used in litigation between certain parties and Bombardier-Rotax entities, Rotax entities, Kodiak Research or affiliates or subsdiaries thereof and others but only if such documents are placed in an envelope marked confidential and then supplied to the court with a request that they be treated as if produced under seal.
Copies of these documents may be provided to other litigants provided they agree with the terms of this confidentiality agreement.
Once the litigation and related actions are over and all appeals have been exhausted, these documents shall be returned to the responding parties' counsel or destroyed upon his direction.
Nothing in this agreement shall prevent recipients from utilizing the documents for all purposes permitted by the Rules of Civil Procedure of the relevant Court.
If in the event, the relevant court decides that the documents produced may not be filed under seal, nonetheless the recipients shall file such documents in an envelope as if they were and shall treat them as such to the extent

practicable.

Even if the relevant court were to determine that the documents were either not worthy of protection as confidential or were compromised, they shall nonetheless be returned or destroyed at the end of proceedings as if their were under seal and confidential.

In the event copies of the produced documents are supplied to experts or other consultants, they shall be required to see this agreement and accede to its terms. At the close of proceedings experts or consultants shall return or destroy all copies of the documents as counsel for the producing entity directs.

---

**From:** Goodstine, Sarah (x2476) [mailto:sgoodstine@pbwt.com]
**Sent:** Wednesday, March 19, 2008 6:27 PM
**To:** Arthur Alan Wolk
**Cc:** Lowenthal, Daniel A. (x2720)
**Subject:** Koziol Subpoena

Dear Arthur:

We write to let you know the timeframe within which we can produce a sample of documents sufficient to show each of the requests within your subpoena, to the extent documents exist for each request.

We understand that GA and GA-ASI are in the process of collecting documents and we anticipate that we will be able to produce a sample of documents from the categories from which documents are available by April 5, 2008.

As stated previously, a protection order must be in place prior to production of any documents.  Please provide to us a proposed draft protective order.

Sarah

Sarah Goodstine, Esq.

Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas, NY, NY 10036

P: 212.336.2476

E: sgoodstine@pbwt.com

F: 212.336.7952

<<Goodstine, Sarah (x2476).vcf>>

------------------------------------------------
Privileged/Confidential Informatio may be contained in this message.  If you are no
the addressee indicated in this message (or responsible for delivery of the message
such person), you may not copy or deliver this message to anyone.  In such case, you
should destroy this message and kindly notify the sender by reply email.  Please adv
immediately if you or your employer do not consent to Internet email for messages of
kind.


------------------------------------------------

IRS Circular 230 disclosure:  Any tax advice contained in this communication (includ
any attachments or enclosures) was not intended or written to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (
promoting, marketing or recommending to another party any transaction or matter addr
in this communication.  (The foregoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)

=================================================================

# Exhibit 4

**From:** Arthur Alan Wolk
**Sent:** Wednesday, June 11, 2008 12:29 PM
**To:** Arthur Alan Wolk
**Subject:** FW: Koziol Subpoena

---

**From:** Arthur Alan Wolk
**Sent:** Thursday, April 03, 2008 9:49 AM
**To:** Goodstine, Sarah (x2476)
**Subject:** RE: Koziol Subpoena

aThank you. Subpoena will be e-mailed to you tomorrow. Send me a dr ft of the protective order as soon as you can but I thought we discussed an agreement rather than an oredr which you can convert to an order if there is a breach.

Hope to hear from you soon.

Arthur

---

**From:** Goodstine, Sarah (x2476) [mailto:sgoodstine@pbwt.com]
**Sent:** Wednesday, April 02, 2008 4:49 PM
**To:** Arthur Alan Wolk
**Cc:** Lowenthal, Daniel A. (x2720)
**Subject:** Koziol Subpoena

Dear Arthur:

Further to my e-mail dated March 19, 2008, I write to update you on the timeframe within which we anticipate that we can produce a sample of documents sufficient to show each of the requests within your subpoena, to the extent documents exist for each request.

We have received documents and are well into the process of our review of the documents. We will provide you with a draft protective order to govern the production of the documents in the near future.

As we discussed previously, in an effort to facilitate the process of responding to your subpoena, we have initiated efforts to collect documents from General Atomics Aeronautical Systems, Inc. ("GA-ASI") even though the operative subpoena dated February 21, 2008 was issued to General Atomics

7/8/2008

("GA") and is not, as a matter of law, applicable to GA-ASI. Because GA is not synonymous with GA-ASI, please serve a separate subpoena on GA-ASI, pursuant to which GA-ASI may produce documents. In an effort to avoid additional expense, we agree to accept service of the subpoena on behalf of GA-ASI.

Regards,
Sarah

Sarah Goodstine, Esq.
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas, NY, NY 10036
P: 212.336.2476
E: sgoodstine@pbwt.com
F: 212.336.7952

------------------------------------------------
Privileged/Confidential Information may be contained in this message.  If you are no
the addressee indicated in this message (or responsible for delivery of the message
such person), you may not copy or deliver this message to anyone.  In such case, you
should destroy this message and kindly notify the sender by reply email.  Please adv
immediately if you or your employer do not consent to Internet email for messages of
kind.

------------------------------------------------

IRS Circular 230 disclosure:  Any tax advice contained in this communication (includ
any attachments or enclosures) was not intended or written to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (
promoting, marketing or recommending to another party any transaction or matter addr
in this communication.  (The foregoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)

==============================================================================

Exhibit 5

**From:** Arthur Alan Wolk
**Sent:** Friday, April 04, 2008 1:20 PM
**To:** Goodstine, Sarah (x2476)
**Cc:** Paul Rosen
**Subject:** RE: Protective Order

Dear Sarah,

This was not the deal and the information was also to be used in the New Jersey litigation. Kindly respond to the subpoena so we can litigate how this non trade secret information should be handled.
Sorry but I am not going to be in a position that whatris produced is useless. This is   isleading a court by a company that makes billions in this country and claims it does no business here. This was a simple task. Kindly respond by Monday so I can file a motion next week.
Thank you,

Arthur Wolk

**From:** Goodstine, Sarah (x2476) [mailto:sgoodstine@pbwt.com]
**Sent:** Friday, April 04, 2008 10:53 AM
**To:** Arthur Alan Wolk
**Cc:** Lowenthal, Daniel A. (x2720)
**Subject:** Protective Order

Dear Arthur:

I have attached below a draft protective order which will govern the production of documents pursuant to the subpoena dated February 21, 2008 you served on General Atomics, and the subpoena you have agreed to serve (via electronic mail to us) on General Atomics Aeronautical Systems, Inc.

Please let me know if you have any questions.

Sarah

<<GA and GA-ASI Protective Order.DOC>>

Sarah Goodstine, Esq.
Patterson Belknap Webb & Tyler LLP

7/8/2008

1133 Avenue of the Americas, NY, NY 10036
P: 212.336.2476
E: sgoodstine@pbwt.com
F: 212.336.7952

```
---------------------------------------------
```
Privileged/Confidential Information may be contained in this message.  If you are no
the addressee indicated in this message (or responsible for delivery of the message
such person), you may not copy or deliver this message to anyone.  In such case, you
should destroy this message and kindly notify the sender by reply email.  Please adv
immediately if you or y ur employer do not consent to Internet email for messages of
kind.

```
---------------------------------------------
```

IRS Circular 230 disclosure:  Any tax advice contained in this communication (includ
any attachments or enclosures) was not intended or written to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (
promoting, marketing or recommending to another party any transaction or matter addr
in this communication.  (The foregoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)

```
=============================================================================
```

Exhibit 6

---

**From:** Arthur Alan Wolk
**Sent:** Tuesday, April 08, 2008 2:06 PM
**To:** Cynthia Devers
**Subject:** FW: Koziol Subpoena

---

**From:** Goodstine, Sarah (x2476) [mailto:sgoodstine@pbwt.com]
**Sent:** Friday, April 04, 2008 10:56 AM
**To:** Arthur Alan Wo k
**Cc:** Lowenthal, Daniel A. (x2720)
**Subject:** Re: Koziol Subpoena

Dear Arthur:

I write to respond to your e-mail dated April 3, 2008. We have not agreed to protect the confidentiality of the material produced or otherwise disclosed in connection with the February 21, 2008 subpoena, or the subpoena that is forthcoming, by entry into a private confidentiality agreement with you. Instead, pursuant to our previous discussions, I have sent to you under separate cover a draft stipulation and protective order.

Regards,
Sarah

Sarah Goodstine, Esq.
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas, NY, NY 10036
P: 212.336.2476
E: sgoodstine@pbwt.com
F: 212.336.7952

------------------------------------------------
Privileged/Confidential Information may be contained in this message. If you are no
the addressee indicated in this message (or responsible for delivery of the message
such person)Xe you may not copy or deliver this message to anyone. In such cas    you
should destroy this message and kindly notify the sender by reply email. Please adv
immediately if you or your employer do not consent to Internet email for messages of
kind.

7/8/2008

-------------------------------------------------

IRS Circular 230 disclosure:  Any tax advice contained in this communication (includ
any attachments or enclosures) was not intended or written to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (
promoti&RY.OXr keting or recommending to another party any transaction or matter addr
in this communication.  (The foregoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)

===============================================================================

# Exhibit 7

**From:** Arthur Alan Wolk
**Sent:** Monday, April 07, 2008 7:01 PM
**To:** Cynthia Devers
**Subject:** FW: Koziol Subpoena

**From:** Goodstine, Sarah (x2476) [mailto:sgoodstine@pbwt.com]
**Sent:** Monday, April 07, 2008 6:28 PM
**To:** Arthur Alan Wolk
**Cc:** Lowenthal, Daniel A. (x2720)
**Subject:** Koziol Subpoena

Dear Arthur:

Please see the attached.

<<General Atomics Response and Objections to February 21, 2008 Subpoena.pdf>>

Sarah Goodstine, Esq.
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas, NY, NY 10036
P: 212.336.2476
E: sgoodstine@pbwt.com
F: 212.336.7952

---------------------------------------------
Privileged/Confidential Information may be contained in this message.  If you are no
the addressee indicated in this message (or responsible for delivery of the message
such person), you may not copy or deliver this message to anyone.  In such case, you
should destroy this message and kindly notify the sender by reply email.  Please adv
immediately if you or your employer do not consent to Internet email for messages of
kind.

---------------------------------------------

7/8/2008

IRS Circular 230 disclosure:  Any tax advice contained in this communication (includ
any attachments or enclosures) was not intended or written to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (
promoting, marketing or recommending to another party any transaction or matter addr
in this communication.  (The foregoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)

==========================================================================

# Exhibit 8

**From:** Arthur Alan Wolk
**Sent:** Friday, June 27, 2008 2:25 PM
**To:** dalowenthal@pbwt.com
**Cc:** dan@holsenbackapc.com
**Subject:** Stipulated Order

And now upon consideration of this stipulation it is ordered:

1. GA and GA-ASI shall make a diligent good faith effort to produce the documents subpoenaed as revised by plaintiffs' counsel.
2. Production shall take place in plaintiffs' counsel's office in Philadelphia by July 5, 2008.
3. All documents produced shall be considered confidential and proprietary.
4. Plaintiffs may use the documents in both this action and a New Jersey State Court Action now filed under seal.
5. Should plaintiffs file any of the documents in any action they shall be filed under seal with a copy of this order attached.
6. Plaintiffs may provide the documents produced to counsel for other parties provided that they are made aware of this order.
7. Whether or not anyone to whom the documents are provided agree this court considers them bound by this order.
8. The documents provided may be used for litigation purposes in the two actions and may be disclosed to employees of the attorneys, the court, consultants, court reporters and those persons ordinarily expected to receive them but they shall be accompanied by a copy of this order.
9. Upon the conclusion of the two litigations the documents shall either be destroyed or returned to GA and GA-ASI as directed by their counsel.
10. In the event GA and/or GA-ASI produce documents that are redacted, they shall immediately be produced in un-redacted versions to this court with an explanation for the redactions but in no event shall the redactions make the documents useless for the purposes plaintiffs' counsel has made clear nor shall redactions be made that are unnecessary.
11. Once a good faith production has been made by GA and GA-ASI plaintiffs' counsel shall notify this court and in that event plaintiffs' counsel shall withdraw his Motion for Sanctions Attorneys Fees and Costs.

So Stipulated and Ordered this _____day of _____2008

For Plaintiffs


Daniel Holsenbach


For GA and GA-ASI

7/8/2008

Daniel Lowenthal

By the Court

# Exhibit 9

Koziol - Draft Protective Order.txt                                                    Page 1 of 3

**From:** Arthur Alan Wolk
**Sent:** Friday, June 27, 2008 4:49 PM
**To:** Lowenthal, Daniel A. (x2720)
**Subject:** RE: Koziol - Draft Protective Order

Dan and Sarah,

Comment -Since I am not admitted pro hac vice in this proceeding I cannot be listed on the
Motion or the Order except as a signatory  to the Order as representing the plaintiffs.

Par 4 should add: All documents produced by the Producing Non Party shall bear a Bates
number for identification in a place that does not interfere with the legibility of the document.

Par. 5 should add: Receiving persons may dispute the designations of "Confidential" and
submit any such dispute to the Court in which case the deposition was taken or this court.

Par. 6  should add: (e) Any mediator or arbitrator in the New Jersey action.
(f) As otherwise ordered by any court presiding over the case in which the documents and
things are used or this court.

Par. 7 remove (a) and add after "person" with the exception of a judge or tribunal in the New
Jersey Action.

Par. 8. Put period after "envelope" and remove the rest of the sentence.
And change "the" to that court at the end of the par.

Par. 9  add "made" before available to the court. Delete "in accordance…. And add "if
requested"

Par.12 Delete  sub. Par. (a) and use "shall instead of "must"

Par. 13 Add (f) "imposes on any Court any obligation not specifically undertaken opr provided

for in the Rules of Civil Procedure of that Court nor shall disclosure by a Court of Confidential information to others in any opinion or published document constitute a breach or contempt of this order by any receiving party or person.

Par. 16 add with the exception of any judge or tribunal.

Par. 10 add: Nothing in this order shall be intended to impose any sanction for the inadvertent disclosure to persons or parties who are not listed in Par. 6 but the disclosing person shall take all reasonable steps to obtain the return of the documents inadvertently produced. Nothing in this order is intended to impose any sanction including attorneys' fees against anyone not directly responsible for the impermissible disclosure of documents. Nothing in this Order with respect to sanctions and attorneys' fees shall apply to Daniel Holsenback who will not receive documents and whose role in this matter has been limited to assisting in bringing the Motion to Enforce the Subpoena.

If we can get agreement on these changes what I propose is that we ask the court jointly to postpone your obligation to file a brief for one month. If the documents produced are a good faith effort to comply then I will withdraw our petition.


Arthur

---

**From:** Lowenthal, Daniel A. (x2720) [mailto:dalowenthal@pbwt.com]
**Sent:** Friday, June 27, 2008 3:52 PM
**To:** Arthur Alan Wolk
**Cc:** Goodstine, Sarah (x2476)
**Subject:** Koziol - Draft Protective Order


Arthur,

Here's the updated draft.  Please call us tonight with your comments.

Dan

Daniel A. Lowenthal
Partner
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY  10036
Direct:  212-336-2720
Cell:  914-980-3794
Fax:  212-336-1253
dalowenthal@pbwt.com
www.pbwt.com



<<v.2 Joint Motion for Protective Order.DOC>>

-------------------------------------------------

Privileged/Confidential Information may be contained in this message.  If you are no
the addressee indicated in this message (or responsible for delivery of the message
such person), you may not copy or deliver this message to anyone.  In such case, you
should destroy this message and kindly notify the sender by reply email.  Please adv
immediately if you or your employer do not consent to Internet email for messages of
kind.


-------------------------------------------------


IRS Circular 230 disclosure:  Any tax advice contained in this communication (includ
any attachments or enclosures) was not intended or written to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (
promoting, marketing or recommending to another party any transaction or matter addr
in this communication.  (The foregoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)


============================================================================

# Exhibit 10

**From:** Arthur Alan Wolk
**Sent:** Tuesday, July 01, 2008 5:00 PM
**To:** Lowenthal, Daniel A. (x2720)
**Cc:** Cheryl DeLisle; dan@holsenbackapc.com
**Subject:** RE: Koziol

Dan,

Meet and confer does not require me to spend months having useless conversations that bear no resolution of the issues.
Everything you tell me I learn is not truthful and I have attempted to accommodate every request you have made.
I reduced the scope several times. I have reduced the period of the requests. I have reduced the quantity that you need to produce. I have reduced the subjects. I have extended the production time several times.
I agreed to a Confidentiality Agreement which I proposed, not an order.
It was only after the Draconian Order you proposed that I stopped conferring and filed a motion.
Now you have attempted to impose even more arduous and time consuming and complicated procedures and trip wires including the temerity to order me to tell a judge he has to clear his courtroom before your documents that are benign nothings can be used.
Everything you have done has been not for your client's protection but for Rotax's and that is not the entity that you are entitled to protect in this proceeding.
You must file what you want and brief what you want. We will litigate the subpoena. I am not going to waste any more time meeting and conferring with someone who never tells me the truth and acts and speaks to me in a condescending manner. My time can better be expended briefing the issues and preparing for the hearing that you unilaterally postponed.
I'll be happy to look at the documents you are willing to produce, keep what I see confidential until we can negotiate a protective agreement,  and if I think they have been done in good faith I will withdraw my motion for sanctions and attorneys fees.
Meet and confer imposes no requirement that I be abused.

Arthur

---

**From:** Lowenthal, Daniel A. (x2720) [mailto:dalowenthal@pbwt.com]
**Sent:** Tuesday, July 01, 2008 12:36 PM
**To:** Arthur Alan Wolk
**Cc:** dan@holsenbackapc.com; Goodstine, Sarah (x2476)
**Subject:** Koziol

Arthur,

I called you last week to try to resolve our dispute, and I have called both Dan Holsenback and you twice today to request again to meet and confer. I have not reached Dan and left him a detailed message. Your office told me you are not available by phone today. They said I could send you an email.

We are making a motion to quash your subpoenas today and, even though your last email on Friday night/Saturday morning said we should brief the matter, I am reaching out to you again. Please call me.

Dan


Daniel A. Lowenthal
Partner
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Direct: 212-336-2720
Cell: 914-980-3794
Fax: 212-336-1253
dalowenthal@pbwt.com
www.pbwt.com


-------------------------------------------------
Privileged/Confidential Information may be contained in this message.  If you are no
the addressee indicated in this message (or responsible for delivery of the message
such person), you may not copy or deliver this message to anyone.  In such case, you
should destroy this message and kindly notify the sender by reply email.  Please adv
immediately if you or your employer do not consent to Internet email for messages of
kind.

-------------------------------------------------

IRS Circular 230 disclosure:  Any tax advice contained in this communication (includ
any attachments or enclosures) was not intended or written to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (
promoting, marketing or recommending to another party any transaction or matter addr
in this communication.  (The foregoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)

==========================================================================

Exhibit 11

**From:** Arthur Alan Wolk
**Sent:** Saturday, June 28, 2008 12:46 AM
**To:** Lowenthal, Daniel A. (x2720)
**Subject:** RE: Koziol - Updated Draft Protective Order

Dan,

I know what I heard. I think you need to brief the Motion and we will do the same. I suspect and with good reason that you are just wasting our time our money and you intend along with your patron, Rotax to sandbag us as you have since the inception of this journey.
We can discuss what we will agree to **after** I see the documents.
You have wasted far more time than this deserves and I intend to request the court to award counsel fees for these two days of continued wasted effort and ask our New Jersey counsel to add this charade of Rotax as an additional act in the RICO complaint. You are completely aware of the RICO litigation including the parties and allegations and your claim you couldn't find out anything about it was false.

Arthur

**From:** Lowenthal, Daniel A. (x2720) [mailto:dalowenthal@pbwt.com]
**Sent:** Friday, June 27, 2008 8:48 PM
**To:** Arthur Alan Wolk
**Cc:** Goodstine, Sarah (x2476)
**Subject:** RE: Koziol - Updated Draft Protective Order

Arthur,

I write solely to respond to the following language in your email below:

"I also wish to confirm that you told me you have had no discussions with Rotax or Bombardier's counsel about these subpoenas and have not shared with them the documents or substance of them. I intend to depose them on that subject."

During our call late this afternoon, you asked if I had given Rotax documents. I told you that I had not. I did not tell you that I had no discussions with Rotax or Bombardier's counsel. That is not something that you and I discussed. As your local counsel knows, a lawyer for Rotax phoned us about your motion to compel and the subpoenas. Rotax's counsel said he knew about the motion because someone at Rotax had seen it on PACER.

Dan

7/8/2008

**From:** Arthur Alan Wolk [mailto:ArthurWolk@airlaw.com]
**Sent:** Fri 6/27/2008 9:44 PM
**To:** Lowenthal, Daniel A. (x2720)
**Subject:** RE: Koziol - Updated Draft Protective Order

Dan,

You are correct that 12 (a) is a problem because if I ask the Court to do that he is going to look at me like I have two heads and I am not prejudicing my client by asking for something that is hardly called for by any documents you are likely producing.

Also the provision relating to inadvertent disclosure is important as although I think it is remote anything can happen and since there are no trade secrets, processes or other documents that will disclose the business of General Atomics I am not taking the risk that an inadvertent disclosure is seized upon for sanctions or attorneys fees especially when you are asking me to relieve you of sanctions and attorneys fees. I have a sense you will not be as generous as you are asking me to be.

None of the documents in the categories I reduced the scope to can prejudice anyone but Rotax thus much of what you are requesting is curiously for its benefit only. I am becoming increasingly concerned and am appropriately suspicious. How could a communication or confirmation of appointment with Rotax reps. for example in this country have any bearing on the business of General Atomics? So what's the concern about Dan? What's confidential here Dan? Is it because Rotax and its lawyers took affidavits and gave depositions of Rotax and Bombardier witnesses in courts all over the country saying they didn't do business in the States? Why should General Atomics be concerned about that especially since even the Air Force makes no bones about its displeasure with the Rotax engine and the fires, accidents and investigations that led to that request to General Atomics that it provide another engine choice.
Just so we understand each other Dan, I haven't been waiting for General Atomics to decide when and if and whether it would comply with the subpoena.

I believe your Confidentiality Order is not for your client's protection but for your client's vendor's protection and I will think about it this weekend whether I am interested in protecting Rotax or Bombardier from anything.
I also wish to confirm that you told me you have had no discussions with Rotax or Bombardier's counsel about these subpoenas and have not shared with them the documents or substance of them. I intend to depose them on that subject.

Thanks and I will speak to you Monday.

Arthur

---

**From:** Lowenthal, Daniel A. (x2720) [mailto:dalowenthal@pbwt.com]
**Sent:** Friday, June 27, 2008 5:50 PM
**To:** Arthur Alan Wolk
**Cc:** Goodstine, Sarah (x2476)
**Subject:** Koziol - Updated Draft Protective Order

Arthur,

Here's a new draft. We have accepted most of your changes. Paragraph 12(a) is still in the document because we need to review your request to delete it with our clients.

It appears that we have just that issue and perhaps one or two others to resolve. We can reconvene on Monday morning.

Please confirm by reply email that we will jointly call the Court on Monday to adjourn the briefing schedule.

Dan

Daniel A. Lowenthal
Partner
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Direct: 212-336-2720
Cell: 914-980-3794
Fax: 212-336-1253
dalowenthal@pbwt.com
www.pbwt.com


<<v.3 Joint Motion for Protective Order.DOC>>

---------------------------------------------
Privileged/Confidential Information may be contained in this message. If you are no
the addressee indicated in this message (or responsible for delivery of the message
such person), you may not copy or deliver this message to anyone. In such case, you
should destroy this message and kindly notify the sender by reply email. Please adv
immediately if you or your employer do not consent to Internet email for messages of
kind.


---------------------------------------------

IRS Circular 230 disclosure: Any tax advice contained in this communication (includ
any attachments or enclosures) was not intended or written to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (
promoting, marketing or recommending to another party any transaction or matter addr
in this communication. (The foregoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)

=========================================================================
---------------------------------------------
Privileged/Confidential Information may be contained in this message. If you are no
the addressee indicated in this message (or responsible for delivery of the message
such person), you may not copy or deliver this message to anyone. In such case, you
should destroy this message and kindly notify the sender by reply email. Please adv
immediately if you or your employer do not consent to Internet email for messages of
kind.

--------------------------------------------------

IRS Circular 230 disclosure: Any tax advice contained in this communication (includ
any attachments or enclosures) was not intended or written to be used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (
promoting, marketing or recommending to another party any transaction or matter addr
in this communication.  (The foregoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)

==========================================================================

# Exhibit 12

1   J. Daniel Holsenback (SBN 145640)
    J. DANIEL HOLSENBACK, APC
2   625 Broadway, Suite 906
    San Diego, California 92101
3   Telephone: (619) 269-4634
    Facsimile: (619) 269-4635
4   *Attorneys for Plaintiffs Theodore and Lois Koziol*

5
    Daniel A. Lowenthal (*Admitted Pro Hac Vice*)
6   PATTERSON BELKNAP WEBB & TYLER LLP
    1133 Avenue of the Americas
7   New York, New York 10036
    Telephone: (212) 336-2720
8   Facsimile: (212) 336-2222
9   *Attorney for General Atomics*
    *and General Atomics Aeronautical Systems, Inc.*
10

11              **UNITED STATES DISTRICT COURT**

12          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

13   THEODORE AND LOIS KOZIOL,        ) Case No. 08-CV-947 DMS (BLM)
                                      )
14                    *Plaintiffs,*    ) Civ. No.: 07-3432
                                      ) Eastern District of Pennsylvania
15            v.                      )
                                      ) **JOINT MOTION FOR  ENTRY OF A**
16                                    ) **PROTECTIVE ORDER**
     UNITED STATES OF AMERICA,        ) **REGARDING CONFIDENTIAL**
17                                    ) **INFORMATION REQUESTED BY**
                      *Defendant.*     ) **SUBPOENA TO NON-PARTIES**
18                                    ) **GENERAL ATOMICS AND GENERAL**
                                      ) **ATOMICS AERONAUTICAL SYSTEMS, INC.**
19                                    )
20                                    ) Hon.: Barbara L. Major
                                      ) Date: July 15, 2008
21                                    ) Time: 1:30 p.m.
                                      )
22   _____ ) **[FRCP 26 and 45]**

23       **WHEREAS,** non-parties General Atomics ("GA") and General Atomics

24   Aeronautical Systems, Inc. ("GA-ASI") (each a "Producing Non-Party," collectively, the

25   "Producing Non-Parties") and Theodore and Lois Koziol, Plaintiffs in the action captioned

26   <u>Koziol v. United States of America</u>, Civ. No. 07-3432 (E.D. Pa.) (the "Pennsylvania Action")

27   agree that the information encompassed by the subpoenas dated February 21, 2008 and April 3,

28
     JOINT MOTION FOR ENTRY OF A PROTECTIVE ORDER REGARDING       CASE NO. 08-CV-047 DMS (BLM)
     CONFIDENTIAL MATERIALS REQUESTED BY SUBPOENA TO NON-PARTIES
     GENERAL ATOMICS AND GENERAL ATOMICS AERONAUTICAL SYSTEMS, INC.
     1814488v.2                                    1

2008 issued by Plaintiffs Koziol to GA and GA-ASI in connection with the Pennsylvania Action

(the "Subpoenas"), may constitute trade secrets or other confidential research, development,

financial, commercial and/or proprietary information within the meaning of Rules 26 and 45 of

the Federal Rules of Civil Procedure and/or any other applicable Local Rule of the Court, GA,

GA-ASI and Plaintiffs Koziol, by their respective counsel, hereby stipulate and jointly request that

the Court enter a protective order which will facilitate and protect the disclosure of information.

The proposed form of Protective Order attached hereto as Exhibit A has been

separately and concurrently submitted pursuant to Rule 7.2 c. of the Local Rules of the United

States District Court for the Southern District of California and the Court's ECF Administrative

Policies and Procedures Manual § 2(h).

Dated: June [__], 2008     By: _____
                                J. Daniel Holsenback (SBN 145640)

                           J. DANIEL HOLSENBACK, APC
                           625 Broadway, Suite 906
                           San Diego, California 92101
                           Telephone:  (619) 269-4634
                           Facsimile:  (619) 269-4635

                           *Attorneys for Plaintiffs Theodore and Lois Koziol*

Dated: _____     By: _____
                                Daniel A. Lowenthal (Admitted *Pro Hac Vice*)

                           PATTERSON BELKNAP WEBB & TYLER LLP
                           1133 Avenue of the Americas
                           New York, New York 10036
                           Telephone:  (212) 336-2720
                           Facsimile:  (212) 336-2222

                           *Attorney for General Atomics and General Atomics*
                           *Aeronautical Systems, Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

1   J. Daniel Holsenback (SBN 145640)
     J. DANIEL HOLSENBACK, APC
2   625 Broadway, Suite 906
     San Diego, California 92101
3   Telephone:  (619) 269-4634
     Facsimile:  (619) 269-4635
4   *Attorneys for Plaintiffs Theodore and Lois Koziol*

5

6   Daniel A. Lowenthal (*Admitted Pro Hac Vice*)
     PATTERSON BELKNAP WEBB & TYLER LLP
7   1133 Avenue of the Americas
     New York, New York 10036
8   Telephone:  (212) 336-2720
     Facsimile:  (212) 336-2222
9   *Attorney for General Atomics*
     *and General Atomics Aeronautical Systems, Inc.*
10

11             **UNITED STATES DISTRICT COURT**

           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
12

13   THEODORE AND LOIS KOZIOL,    ) Case No. 08-CV-947 DMS (BLM)
                        )
14               *Plaintiffs,*  ) Civ. No.: 07-3432
                        ) Eastern District of Pennsylvania
15          v.          )
                        ) **[PROPOSED]**
16                        ) **PROTECTIVE ORDER**
     UNITED STATES OF AMERICA,   ) **REGARDING CONFIDENTIAL**
17                        ) **INFORMATION REQUESTED BY**
               *Defendant.* ) **SUBPOENA TO NON-PARTIES**
18                        ) **GENERAL ATOMICS AND GENERAL**
19                        ) **ATOMICS AERONAUTICAL SYSTEMS, INC.**
                        )
20                        )
                        )
21                        )
                        )
22                        )

23

24        1.    This Protective Order shall govern the receipt, use and handling of all

25   information, including documents (including graphic and electronically stored information) that

26   is produced or otherwise disclosed by the Producing Non-Parties in connection with, or in

27   response to the Subpoenas (the "Material").

28

JOINT MOTION FOR ENTRY OF A PROTECTIVE ORDER REGARDING     CASE NO. 08-CV-047 DMS (BLM)
CONFIDENTIAL MATERIALS REQUESTED BY SUBPOENA TO NON-PARTIES
GENERAL ATOMICS AND GENERAL ATOMICS AERONAUTICAL SYSTEMS, INC.
1814488v.2                          4

2.      All Material produced or disclosed pursuant to the Subpoenas shall be used solely for the purposes of the Pennsylvania Action and the action captioned <u>Koziol v.</u> <u>Bombardier Inc., et al.</u>, No. OC-NL-2749-07 (N.J. Super. Ocean County) (the "New Jersey Action" and together with the Pennsylvania Action, the "Actions"), and no person shall make use of the Material in any other legal proceeding, whether in the United States or elsewhere, or make any other use of the Material whatsoever.  All Material shall be disclosed only to those persons identified in Paragraph 6 (each, a "Receiving Party," together, the "Receiving Parties"), and only to the extent that such Receiving Parties use the Material solely with respect to the conduct of the Actions.

3.      All Material produced or disclosed by any Producing Non-Party shall be treated as consisting entirely of "Confidential Information," which may include, but is not limited to, proprietary business information, trade secrets or other confidential research, development, personal, manufacturing, supply, distribution, purchasing, financial, licensing, marketing, risk management, operations, product analysis or commercial information.

4.      All documents (including copies, portions or summaries thereof) and physical objects produced or disclosed by any Producing Non-Party will be deemed to be "Confidential" and subject to this Protective Order, without any requirement for the Producing Non-Parties to stamp, affix, designate or otherwise identify the documents and physical objects as "Confidential."  All documents produced by any Producing Non-Party shall bear a Bates number for identification in a place that does not interfere with the legibility of the document.

Testimony or information disclosed at a deposition of any employee of any Producing Non-Party may be designated by a Producing Non-Party as Confidential Information by indicating on the record at the deposition the specific testimony which contains the Confidential Information that is to be made subject to the provisions of this Protective Order. Alternatively, a Producing Non-Party may designate testimony or information disclosed at a deposition as Confidential Information by notifying the recipient of the Confidential Information in writing within thirty (30) days of receipt of the deposition transcript of the specific pages and

lines of the transcript that are to be so designated. Whether or not designation is made at the time of a deposition, all depositions of employees of the Producing Non-Parties shall be treated as Confidential Information from the time of the taking of the depositions until thirty (30) days after receipt of the deposition transcript. Receiving Parties may dispute the designation of such deposition testimony as "Confidential" by providing notice to the Producing Non-Party, and thereafter, by submitting any such dispute to ▮ Court. ▮

▮

6. Confidential Information may be disclosed only in accordance with Paragraphs 2 and 7, and only to the following persons:

(a) Counsel of record in the Actions;

(b) The parties to the Actions;

(c) The Court, Court reporters, stenographers, videographers, and/or Court personnel;

(d) Consultants and experts in connection with the Actions, whether or not they testify at trial or otherwise;

(e) Deponents noticed or subpoenaed in the Actions, to the extent necessary to examine such deponents or to prepare them for deposition;

(f) Witnesses who will testify at trial in the Actions, to the extent necessary to examine such witnesses or prepare them for trial;

(g) Independent photocopying or litigation support services employed by the persons or their counsel to assist in the Actions; and

(h) Any mediator or arbitrator presiding over the New Jersey Action;

(i) And, upon providing notice to the Producing Non-Party, to persons ordered to be recipients by a Court presiding over the Actions or ▮ (court in which actions are pending) Court; and

(j) Any other person to whom the Producing Non-Party agrees in writing.

7.     Any person, prior to being given access to Confidential Information, shall be provided with a copy of the Protective Order by the person disclosing such Confidential Information, and shall be advised by the disclosing person (unless it is the Court or a tribunal in the New Jersey Action being given access) that violation of this Protective Order may be punishable by contempt of Court. Once a person has been provided access to Confidential Information in accordance with this Order, that person shall be deemed a Receiving Party and shall thereupon become subject to the terms of this Protective Order, including, without limitation, the provision that Confidential Information may not be disclosed to any person or in any manner other than as described in Paragraph 6 above and shall be used solely for the purpose of the Actions.

████ Any Receiving Party who wishes to file Confidential Information in the Actions as part of any motion, paper or other filing with the Court shall (a) move to file the Confidential Information under seal in accordance with  Rule 79.2 of the Local Rules of the United States District Court for the Southern District of California and/or any other applicable rules; or (b) with respect to the New Jersey Action, file the Confidential Information in a sealed envelope and take any other action required by ████████████████████ (required by the Court) Information.   In accordance with Local Rule 79.2 and/or any other applicable rules and procedures, all Material furnished by any Producing Non-Party filed under seal in the Actions will be returned to the person submitting such Material upon entry of the final judgment or termination of the appeal, if any, unless otherwise ordered by the Court ████████ ████

9.     Any Producing Non-Party may redact or excise information that is non-responsive or subject to the attorney-client, military safety and/or attorney work product privileges.  Documents and things that have been redacted shall bear the identification "REDACTED" in the locations on the documents and things where such matter has been redacted.  If produced copies have been so redacted or excised, the Producing Non-Party will maintain complete originals which will be made available to the Court if requested by the Court.

The Receiving Party has the right to request the Court to review any redacted Material, and upon the request of the Receiving Party, the Producing Non-Party will provide the Court with the applicable redacted Material for *in camera* review.

10.   If Confidential Information is disclosed to any person other than in the manner authorized by this Order, the person responsible for the disclosure shall immediately bring all pertinent facts relating to such disclosure to the attention of all counsel of record and, without prejudice to other rights and remedies available to the Producing Non-Parties, make every effort to obtain the return of the disclosed Confidential Information and prevent further disclosure of such Confidential Information.

11.   Any person who receives Confidential Information may be subject to contempt of court and discovery sanctions (including without limitation, an award of reasonable attorneys' fees) in the event that such person discloses Confidential Information to persons not authorized by Paragraph 6 above or uses such Confidential Information for any other purpose than the Actions. Notwithstanding anything herein to the contrary, inadvertent disclosure of Confidential Information shall bear no sanction or be liable for attorneys fees so long as once the disclosure is learned of the person or persons responsible for the inadvertent disclosure takes all reasonable steps to obtain the return or destruction of the Confidential Material.

12.   Nothing in this Order shall prevent a Receiving Party from using Confidential Information at depositions, trial, during a hearing, or the like, in accordance with the restrictions herein.  However, the Receiving Party using such Confidential Information must do the following:



(b)      Following the use of the Confidential Information at a trial, hearing, or the like, the Receiving Party must request that the portion of the

proceeding where said use is made shall be designated as "Confidential Information" and that the transcript of that portion of the proceeding be maintained under seal in accordance with Paragraph 8, with access thereto limited to persons entitled to access under this Protective Order.

13.    Nothing in this Protective Order in any manner:

(a)    May be construed as an agreement or admission that any information, document or the like, designated as Confidential Information is in fact confidential or a trade secret;

(b)    Waives any objection to the relevancy, materiality or admissibility of any Material or any other information or document or to the applicability of the Subpoenas to any Producing Non-Party;

(c)    Waives any claims or defenses that may apply;

(d)    Defines the scope of material to be produced in response to the Subpoenas; or

(e)    Relieves any Producing Non-Party from its obligation to comply with the requirements of Rules 26 and 45 of the Federal Rules of Civil Procedure, including any obligation to produce responsive, non-privileged, relevant documents pursuant to the Subpoenas.

Disclosure of Confidential Information by a Court in any opinion or published document shall not constitute a breach or contempt of this Order by any Receiving Party or person.

14.    If any Producing Non-Party, through inadvertence, produces or discloses any document or information that it believes is immune from discovery pursuant to the attorney-client, military safety or attorney work product privileges, such production shall not be deemed a waiver of any privilege, and the Producing Non-Party may give written notice to the recipient that the document or information produced is deemed privileged and that return of the document or information is requested. Upon receipt of such written notice, the recipient shall within three

1  (3) business days gather the original and all copies of the document or information of which the

2  Receiving Party is aware and shall immediately return the original and all such copies to the

3  Producing Non-Party.  However, if the Receiving Party in good faith disputes the Producing

4  Non-Party's written notice characterizing produced Material as subject to attorney-client,

5  attorney work product or military safety privilege, the Receiving Party and Producing Non-Party

6  will submit the dispute to the Court.

7          15.    Within sixty (60) days after the later of the final conclusion of the Pennsylvania

8  or New Jersey Actions, all Material produced or otherwise disclosed and all Material designated

9  as Confidential Information, and all reproductions and transcriptions thereof, shall be returned to

10  the Producing Non-Party or shall be destroyed, at the option of counsel to the Producing Non-

11  Party.

12          16.    The term "person" or "recipient" as used in this Protective Order will be

13  interpreted broadly to include, without limitation, any corporation, company, association,

14  partnership or individual, but not a Judge or tribunal.

15          17.    The provisions of this Protective Order will continue to be binding and survive

16  termination of the Actions.  This Court retains jurisdiction over all affected persons with respect

17  to any matters, claims or rights from or related to this Protective Order and the disclosure and

18  production of Confidential Information until all Material is destroyed or returned in accordance

19  with Paragraph 15.

20          18.    The provisions of this Protective Order are subject to further Court order, based

21  upon public policy and other considerations.  This Order is without prejudice to the right to move

22  at any time for modification of this Order or for an order to free any Confidential Information

23  from the above restrictions upon a showing of good cause.

24          19.    Notices hereunder shall be made in writing by electronic and overnight mail,

25  sent to the offices of the undersigned counsel.

26  **IT IS SO ORDERED:**

27  _____      _____

28

1

Hon.   Barbara L. Major                              Date

2

United States Magistrate Judge

3

United States District Court for the Southern
District of California

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 13

**(Not Used)**

# Exhibit 14





## About General Atomics

### Global Progress Through Technology...

Founded in 1955 as a division of General Dynamics, General Atomics ("GA") and its affiliated companies now constitute one of the world's leading resources for high-technology systems ranging from the nuclear fuel cycle to electromagnetic systems, remotely operated surveillance aircraft, airborne sensors, and advanced electronic, wireless and laser technologies.

GA had an initial charter to explore peaceful uses of atomic energy. Leading scientists came to GA, forming the nucleus of a staff which, including affiliated companies, currently numbers about 5,000. GA carries out the largest and most successful nuclear fusion program in private industry. The company has been the primary developer of modular helium-cooled nuclear power reactor systems, and its TRIGA® research reactors have operated around the world for over 45 years. GA and its affiliated entities also manufacture, operate, and service state-of-the-art unmanned aerial vehicles, are engaged in uranium mining and processing, and provide nuclear instrumentation, aircraft launch and recovery systems, superconducting magnets, systems for hazardous material destruction, magnetic levitation systems, medical diagnostic products, information technology and many other products and services for government and industry.

For over 50 years, GA and its affiliates have been qualified by U.S. Government organizations, including the Department of Energy, Department of Defense and the National Science Foundation, as a government contractor and facilities operator. GA and affiliates' facilities contain over three million square feet of engineering, laboratory and manufacturing installations in the San Diego area. GA and its affiliates also have operations in Berlin, Dresden, Moscow, Tokyo, Adelaide, Washington, D.C., Denver, Los Alamos, Oklahoma City, Tupelo and Ogden.





For a map and driving instructions to GA's main facilities, as well as a listing of some nearby hotels, please click here.

For a high resolution printer friendly version, please click here. (1.6 MB)

To download our Brochure, click here: High Res (17 MB) | Low Res (2.1 MB)



Aerial View of General Atomics' San Diego Facility



Predator® Unmanned Aerial Vehicle (UAV)



Maglev Transportation



Electromagnetic Aircraft Launch System (EMALS)



High-power AC Propulsion System



14-MW TRIGA® R in Romania



Inside DII-D Fusion



LYNX™ Radar S



High-speed Railroad Maintenance Ve



Modular Helium-coole

1    <u>Kozoil v. United States of America</u>
     **USDC, Southern District of California, Case No. 3:08-cv-00947-DMS-BLM**
2
                                    **PROOF OF SERVICE**
3
            I am a resident of the State of California, over the age of 18 years and not a party to the
4    within action. My business address is HOLSENBACK APC, 625 Broadway, Suite 906, San Diego,
     California 92101.
5
            On July 8, 2008, I caused to be electronically filed the foregoing document(s), described as:
6
            **PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL**
7    **        AND FOR SANCTIONS AGAINST GENERAL ATOMICS AERONAUTICAL**
     **        SYSTEMS, INC.;**
8
            **DECLARATION OF ARTHUR ALAN WOLK IN FURTHER SUPPORT OF THEIR**
9    **        MOTION TO COMPEL AND MOTION FOR SANCTIONS AGAINST GENERAL**
     **        ATOMICS AERONAUTICAL SYSTEMS, INC. (AND EXHIBITS);**
10
11          with the Clerk of the United States District Court for the Southern District of California,
     using the CM/ECF System. The Court's CM/ECF System will send an e-mail notification of the
12   foregoing filing to the following parties and counsel of record who are registered with the Court's
     Cm/ECF System:
13
            Paul A. Tyrell, pat@procopio.com
14          United States Attorneys' Office, efile.dtk.civ@usdoj.gov
            Daniel A. Lowenthal, dalowenthal@pbwt.com
15          Sarah Goodstine, sgoodstine@pbwt.com
16
     Pursuant to the CM/ECF System, registration as a CM/ECF user constitutes consent to electronic
17   service through the Court's transmission facilities.
            I declare penalty of perjury under the laws of the State of California, that the above is true
18   and correct.
19
            Executed on July 8, 2008, at San Diego, California.
20
21
22                                                  /s/ Patrick  Todd
                                                    Patrick Todd
23
24
25
26
27
28

                                                                                    **PROOF OF SERVICE**